**James F. HEIMERLE, Plaintiff,**

v.

**ATTORNEY GENERAL, UNITED STATES OF AMERICA, et al., Defendants.**

**No. 82 CIV 5900 (LBS).**

United States District Court, S.D. New York.

March 11, 1983.

James F. Heimerle, pro se.

John S. Martin, Jr., U.S. Atty. S.D.N.Y., New York City, for defendants; Stephen A. Dvorkin, Asst. U.S. Atty., New York City, of counsel.

## OPINION

SAND, District Judge.

Plaintiff *pro se* is a federal prisoner currently incarcerated at F.C.I., Otisville, New York ("Otisville"), a security level 4 institution.[1] In his complaint, he alleges that he has recently been transferred from USP-

---

1. Bureau of Prisons Policy Statement 5100.2 (October 7, 1982) calls for a classification of prison institutions on a scale of "security levels" between 1, for the least secure, and 6, for the most secure. Similarly, each inmate is as- signed a security level between 1 and 6; the greater the security need as determined by the prison authorities to be appropriate for an inmate, the greater the security level assigned to him.

Atlanta, where he sent and received general (*i.e.,* non-privileged) correspondence, unread and uncensored; that at Otisville, his incoming and outgoing mail is being read and censored by the institution's supervisory staff and correctional officers, who are randomly assigned to that duty and who receive no special training for that procedure; that this potentially considerable exposure of confidences and personal thoughts has chilled protected expression and speech by plaintiff and his correspondents, most notably his teenage children; and that plaintiff has never been a managerial or disciplinary problem to prison authorities and that the Otisville authorities lack any cause to read and censor his mail. Accordingly, plaintiff claims that the reading and censorship of his incoming and outgoing general correspondence, as well as the regulations pursuant to which such actions are taken, 28 C.F.R. Part 540, Subpart B (1982),[2] violate his rights under the First and Ninth Amendments to the United States Constitution. He further claims that the waiver form notice set forth at 28 C.F.R. § 540.-11(b), Part II, improperly conditions the receipt of general correspondence on the acknowledgment that prison officials may open and read such correspondence. While no final relief is expressly requested, the complaint asks for a temporary restraining order and an order directing defendants to show cause why they should not be preliminarily enjoined from reading and censoring plaintiff's mail. Plaintiff also asks that the Court appoint counsel to represent him in this proceeding.

Defendants, among whom are the Attorney General of the United States, the Director of the Bureau of Prisons, and the Warden of Otisville, have moved to dismiss for failure to state a claim upon which relief can be granted. Their arguments as to the constitutionality of the practice of reading plaintiff's mail and those relating to the censoring of his mail are discussed in turn below.

*Reading General Correspondence*

█ Relying in the first instance on *Sostre v. McGinnis,* 442 F.2d 178, 199–201 (2d Cir. *en banc* 1971), *cert. denied sub nom. Oswald v. Sostre,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972), defendants contend that "prison officials may open and read all outgoing and incoming correspondence to and from prisoners." 442 F.2d at 201. Accordingly, 28 C.F.R. § 540.13(b), which allows incoming mail to be read "as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate", and 28 C.F.R. § 540.13(d), which unqualifiedly allows plaintiff's outgoing general correspondence to be read by the staff, should be viewed as constitutionally sound.

Defendants' reliance on *Sostre,* however, is misplaced, in light of the subsequent adoption by the Supreme Court in *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224 (1974), of a more stringent test for restrictions on prisoners' First Amendment rights than that utilized in *Sostre. See id.* at 406, 94 S.Ct. at 1808, *citing Sostre,* 442 F.2d at 199. Moreover, in *Wolfish v. Levi,* 573 F.2d 118, 131 n. 28 (2d Cir.1978), the Second Circuit expressly rejected the Seventh Circuit's decision in *Smith v. Shimp,* 562 F.2d 423 (7th Cir.1977) (upholding the routine reading of outgoing

2. "§ 540.13 General Correspondence.

. . . . .

(b) Institution staff shall open and inspect all incoming general correspondence. Incoming general correspondence may be read as frequently as deemed necessary to maintain security or monitor a particular problem confronting an inmate.

(c) Outgoing mail in Security Level 1, 2, 3, and of pretrial detainees in all institutions may be sealed by the inmate and is sent out unopened and uninspected. Staff may open an inmate's outgoing general correspondence:

(1) If there is reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity;

(2) If the inmate is on a restricted correspondence list; or

(3) If the correspondence is between inmates. (See § 540.16).

(d) Outgoing mail in Security Level 4, 5, and 6 and administrative institutions, except 'special mail', may not be sealed by the inmate and may be inspected and read by staff."

28 C.F.R. § 540.13(b), (c), (d) (1982).

nonprivileged mail). The Second Circuit's opinion in *Wolfish* is significant here also for its affirmation of Judge Frankel's order enjoining the reading of a prisoner's incoming and outgoing nonprivileged mail without good cause and outside of the prisoner's presence. 573 F.2d at 125, *affirming in relevant part United States ex rel. Wolfish v. United States,* 428 F.Supp. 333, 341–44 (S.D.N.Y.1977), *rev'd on other grounds sub nom. Bell v. Wolfish,* 441 U.S. 520, 528 n. 9, 99 S.Ct. 1861, 1868 n. 9, 60 L.Ed.2d 447 (1979). Only last year, this Circuit in *Davidson v. Scully,* 694 F.2d 50 (2d Cir. 1982), concluded: "At a minimum, *Wolfish* can be read as limiting *Sostre's* sweep to those situations where the challenged interference substantially furthers a plausible security interest in a rational manner." *Id.* at 54. *See also Dawson v. Kendrick,* 527 F.Supp. 1252, 1311–12 & n. 65 (S.D.W.Va. 1981) (prison officials required to promulgate regulations governing inspection of incoming mail, articulating interests to be served and specific practices to accomplish that end). As to defendants' citation of *Golden v. Coombe,* 508 F.Supp. 156, 159–60 (S.D.N.Y.1981), for the proposition that a prisoner's incoming general correspondence may be "routinely" read, we note simply that the facts of that case raised only the issue of inspection in the prisoner's presence and subsequent reading with good cause of unsealed, outgoing mail. *See also United States ex rel. Wolfish, supra,* 428 F.Supp. at 343 ("paper submissions and the court's direct knowledge of the MCC make it plain that there can be no sound reason to allow correctional personnel routinely to *read* incoming letters"; emphasis in original).

Defendants alternatively argue that the regulations here at issue manifest a clear relationship between the challenged means and legitimate penological objectives, as required under *Procunier v. Martinez, supra,* and that, accordingly, the reading of plaintiff's correspondence is supported by "good cause", as required by *Wolfish v. Bell, supra.*

Defendants' argument, however, unjustifiably presupposes as to these regulations the requisite narrowness demanded of any restriction on prisoner correspondence and communication. *Procunier v. Martinez, supra,* 416 U.S. at 413–14, 94 S.Ct. at 1811 ("a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad"). In essence, defendants ask that we affirm on this motion to dismiss and without the benefit of a record, the Bureau of Prison's conclusive presumption of "good cause" for reading the outgoing mail of each inmate in a security level 4, 5 or 6 institution and the incoming mail of each inmate in the federal prison system.

Defendants' position appears especially overstated for at least two reasons. First, plaintiff alleges, and we must assume for this motion, that he has not been a disciplinary problem and is classified by the prison authorities at security level 3. While we recognize that the security level of a prison, and presumably, of the majority of its inmate population, may properly influence the restraints placed on all inmates, we nevertheless note that were he incarcerated at a prison with a security level commensurate with his individual status, prison authorities would not be permitted to open and read his outgoing mail unless they "had reason to believe it would interfere with the orderly running of the institution, that it would be threatening to the recipient, or that it would facilitate criminal activity." 28 C.F.R. § 540.13(c).

Second, it appears from 28 C.F.R. Part 540, Subpart D, that conversations held in the course of social visits are left unmonitored. Plaintiff could not, of course, base his claim for relief from the reading of his mail on what is perhaps only an overgenerous grant of privacy during social visits but as the district and appellate courts in *Wolfish* noted, the absence of any similar vigilance with regard to the latter may suggest that the asserted "manifest" security interests are somewhat illusory. *See United States ex rel. Wolfish v. supra,* 428 F.Supp. at 343–44, *aff'd in relevant part,* 573 F.2d at 130.

We are mindful too, as the Bureau of Prisons noted at one point, that some state prison systems retain the authority to open and read mail only when there is "probable cause" to believe abuses exist and that there may exist sufficient sanctions for *demonstrated* abuses to attain the institution's legitimate security interests. *See* 44 *Federal Register* 44,222–23 (1980); Alaska Correc.Inst., § 705 (1972); Cal. Dep't of Correc. DP–2404, 2411 (rev. 1975); Ill.Correc.Ad.Reg., Adult Div'n § 823 (1975); N.J. Div'n of Correc. & Parole Stds. 291.271, .273 and .275 (1975); Uniform Law Commissioners' Model Sentencing & Correc. Act § 4–117(b) (National Inst. of Law Enforcement and Criminal Justice 1979).

In light of these concerns, we are of the opinion that consideration of plaintiff's claims can be made only on the basis of at least some supplementation of the record herein. We are not unmindful of the difficult and complex task of maintaining order and discipline in institutions such as Otisville and the heavy burden which prison officials must shoulder. We are also aware of the use of the mails for purposes of planning and implementing efforts to smuggle contraband into such institutions and engaging in other unlawful activities. We hold here only that the issues presented are far more difficult and complex than the defendants' brief suggests and require further legal and factual development.

3. 28 C.F.R. § 540.13(e) (1982) states:
"The Warden may reject correspondence sent by or to an inmate if it contains any of the following:
(1) Matter which is nonmailable under law or postal regulations;
(2) Information of escape plots, of plans to commit illegal activities, or to violate institution rules;
(3) Direction of an inmate's business (See § 541.11(d), Prohibited Act No. 408). An inmate, unless he is a pretrial detainee, may not direct a business while confined.
This does not, however, prohibit correspondence necessary to enable an inmate to protect property and funds that were legitimately his at the time of commitment. Thus, for example, an inmate may correspond about refinancing a mortgage on his home or sign insurance papers, but he may not operate a mortgage or insurance business while in the institution.

*Censorship of Plaintiff's General Correspondence*

■ Plaintiff claims that the prison's censorship, or "rejection" of mail sent by or to an inmate pursuant to 28 C.F.R. § 540.-13(e) [3], "chills" his expression of unfavorable views of Otisville or its staff. We construe this claim as asserting that the standards employed in § 540.13(e) are too broadly phrased and thereby chill protected speech. It would appear, however, that these standards are narrowly and properly drafted to restrain speech and expression detrimental to penological and institutional objectives. *See Procunier v. Martinez, supra,* 416 U.S. at 413, 94 S.Ct. at 1811; *cf. id.* at 414 n. 14, 94 S.Ct. at 1812 n. 14 (quoting earlier version of § 540.13(e) for favorable comparison). See also 47 *Fed.Reg.* 22,005–06 (1982), which amended § 540.13(e)(4) to conform to the ruling in *Samuels v. Smith,* Docket No. TH–79–124–C (S.D.Ind.), by substituting the present provision for the phrase, "Clear harassment of a member of the public, including invasion of privacy".

■ Alternatively, we might broadly construe plaintiff's *pro se* complaint as alleging unwarranted instances of censorship. However, in light of the absence of any showing by plaintiff of his resort to the administrative remedies set forth at 28 C.F.R. § 540.-12,[4] even such allegations would be incapable of redress by the Court at this point.

(4) Threats, extortion, obscenity, or gratuitous profanity;
(5) A code; or
(6) Contraband. (See § 500.1. A package received without prior authorization by the Warden is considered to be contraband.)"

4. "§ 540.12 Notification of rejections.
When correspondence is rejected because of content, the Warden shall notify the sender in writing of the rejection and the reasons for the rejection. The Warden shall also give notice that the sender may appeal the rejection. The Warden shall also notify an inmate of the rejection of any letter addressed to him, along with the reasons for the rejection and notify him of the right to appeal the rejection. The Warden shall refer an appeal to an official other than the one who originally disapproved the correspondence."
28 C.F.R. § 540.12 (1982).

*Conclusion*

On the basis of the reasoning set forth above, defendants' motion to dismiss is granted to the extent that the complaint alleges a violation of plaintiff's rights by reason of defendants' censorship of his general correspondence. In all other respects, defendants' motion to dismiss is denied.

Further, plaintiff's application for the appointment of counsel is hereby granted, and the *Pro Se* Clerk of the Southern District of New York is hereby directed to implement this ruling.

Finally, plaintiff's failure to prove at this early juncture irreparable harm or a likelihood of success on the merits necessitates the denial of his request for temporary injunctive relief without prejudice to renewal after appointed counsel has had an opportunity to become familiar with this proceeding.

SO ORDERED.