Zachary MORGAN, Petitioner-Appellant,

v.

Ernest L. MONTANYE, Warden of Attica State Prison, Correctional Officer Steggs, et al., Respondents-Appellees.

No. 614, Docket 74-2390.

· United States Court of Appeals, Second Circuit.

Aug. 13, 1975.

Dissenting Opinion Aug. 18, 1975.

A poll of the judges in regular active service having been taken at the request of such a judge as to whether this action should be reheard en banc and there being no majority in favor thereof, it is

Ordered that rehearing en banc of opinion, 516 F.2d 1367, is denied.

OAKES, Circuit Judge (dissenting):

I respectfully dissent from the denial of rehearing en banc.

If prison inmates have any rights against prison censorship of mail those rights exist in respect to correspondence with their own attorneys, by virtue of Fifth and Sixth as well as First Amendment considerations. Note, *Prison Mail Censorship and the First Amendment*, 81 Yale L.J. 87, 98 (1971). It is true that *Sostre v. McGinnis*, 442 F.2d 178, 200 (2d Cir. 1971) (en banc), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972), held that *all* outgoing and incoming correspondence to and from prisoners could be opened and read (442 F.2d at 201). But, following *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), mail censorship has to be conducted under standards that meet the requirements of the First and Fourteenth [or Fifth] Amendments, and surely implicitly the Sixth Amendment right to effective assistance of counsel. That is to say, in this situation the State has the heaviest of burdens to show that the censorship "regulation or practice in question . . . further[s] an impor-

tant or substantial governmental interest unrelated to the suppression of expression." 416 U.S. at 413, 94 S.Ct. at 1811. Not only must "the limitation of First Amendment freedoms . . . be no greater than is necessary or essential to the protection of the particular governmental interest involved," *id.*, there must be, moreover, "minimum procedural safeguards" in protection of the inmate's rights, including "a reasonable opportunity to protest" the censorship decision. *Id.* at 417, 418, 94 S.Ct. 1800. *See also Cooper v. Pate*, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964). While the majority of the Court in *Procunier v. Martinez* was concerned with censorship of prison inmate mail and did not reach the specific issue whether prison authorities do have a general right to open and read *all* incoming and outgoing prison inmate mail, the concurring opinion of Mr. Justice Brennan and Mr. Justice Marshall does reach that issue and denies the authorities that right. *See especially* 416 U.S. at 424–25, 94 S.Ct. 1800. If physical tests for contraband are inadequate, they insist, mere opening and inspection but not reading suffices. 416 U.S. at 425 and n. 6, 94 S.Ct. 1800.

We are dealing here, moreover, not simply with the constitutional right to uncensored correspondence between any outsider and the prisoner, but on the even higher plane of the attorney-client privilege since here involved is the right to free correspondence between prisoner and counsel. As the Seventh Circuit said in *Adams v. Carlson*, 488 F.2d 619, 631 (7th Cir. 1973), "there has been widespread agreement that communications by post between an inmate and his attorney are sacrosanct, subject only to tests on incoming mail for the presence of contraband which fall short of opening it when the inmate is not present." The other leading case is *Smith v. Robbins*, 454 F.2d 696 (1st Cir. 1972). *Smith* affirms an *Adams* type of ban on opening attorney-prisoner correspondence (even to search for contraband) except in the presence of the prisoner. If such opening were allowed, Chief Judge Aldrich reasoned,

a prisoner, and possibly some attorneys, may feel, if only to a small degree, that someone in the chain of command may not be trusted [not to read the letter] and that the resulting fear may chill communications between the prisoner and his counsel.

454 F.2d at 697. *Cf. Bach v. Illinois*, 504 F.2d 1100 (7th Cir. 1974); *McDonnell v. Wolff*, 483 F.2d 1059, 1066–67 (8th Cir. 1973), *aff'd in part, rev'd in part*, 418 U.S. 539, 577, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Goodwin v. Oswald*, 462 F.2d 1237 (2d Cir. 1972); *Rhem v. McGrath*, 326 F.Supp. 681, 691 (S.D.N.Y.1971) (protecting verbal exchange); and then District Judge Mansfield's *Carothers v. Follette*, 314 F.Supp. 1014, 1023 (S.D.N.Y. 1970). It is my view in short that we are required to qualify *Sostre* at this time, by incorporating the *Adams* and *Smith* requirement that the inmate be present if his attorney's mail is to be opened at all for the limited purpose of searching for contraband.

There are some implications or suggestions in the panel opinion beyond its rigid, dated reading of *Sostre* that possibly there was confusion on prison officials' parts as to whether it was *legal* mail that was being opened. But a name file of attorneys of record was maintained at Attica and the name of appellant's attorney, a St. John's University Law School professor, had been listed in that file for a year as appellant's attorney. While only one of four letters from the attorney that were improperly opened contained his name on the envelope, they all bore a printed return address from St. John's Law School. Moreover, the written reason given by the correction officer who did open and read Morgan's mail clearly set forth the officer's knowledge that the St. John's law professor was Morgan's attorney; the officer only wanted proof that he was a "competent attorney" and "admitted to the Law Bar." The issue cannot, in my opinion, be ignored on the ground of confusion or uncertainty on the part of the officer. Parenthetically, it is to be noted that *Procunier v. Martinez* expressly held, 416 U.S. at 420, 94 S.Ct. 1800, 40 L.Ed.2d 224, that a ban against "the use of law students and other paraprofessional personnel" to advise prison inmates was improper, so that the Attica officer's concern with the competence of Morgan's counsel was officiousness now constitutionally unjustified.

Even less can be said for the panel's gratuitous reference to, if not alternative reliance upon, the absence of allegation that Morgan had "suffered any damages." This is a civil rights claim. An allegation of damages purely nominal in nature, therefore, is entirely sufficient. *Joseph v. Rowlen*, 425 F.2d 1010 (7th Cir. 1970); *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965). *See United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975). As in the case of defamation where the law allows recovery for language actionable per se even absent proof of damages, 1 F. Harper & F. James, The Law of Torts § 5.30, at 468 and n. 2 (1956 ed.), the action provides a vindicatory function. A jury, moreover, may give "general" damages for violation of a constitutional right. *Cf. Nixon v. Herndon*, 273 U.S. 536, 47 S.Ct. 446, 71 L.Ed. 759 (1927); *Wayne v. Venable*, 260 F. 64, 66 (8th Cir. 1919).

Certainly the right to unfettered access to the court through counsel is a right that is rather fundamental. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). For the prison inmate in Attica who has as counsel for the appeal from his conviction an attorney hundreds of miles away in Jamaica, New York, communication with counsel can be achieved only by correspondence. Absent the preservation of the integrity of such communication, the right to counsel is a hollow one, as has been recognized since the reign of Elizabeth I, 8 J. Wigmore, Evidence § 2290, at 542 n. 1 (McNaughton rev. 1961). Effective assistance of counsel implies the rigorous preservation of confidentiality of com-

munication, to a point indeed that is a pillar of the canons of legal ethics themselves. *See* American Bar Association, Code of Professional Responsibility, Canon 4 (1971). Such confidentiality itself is a keystone in the architecture of any enlightened system for the administration of justice.[1]

I would rehear this important case, wrongly decided and in conflict with other circuits if not recent Supreme Court decisions, en banc.

---

1. It is unnecessary in this dissent to consider the question whether the same privilege extends to communications relative to potential litigation against the prison itself or its officials, since this case concerns a pending appeal from conviction, although logic would seem to dictate that such a case is, if anything, a fortiori to this.