Silas GOLDEN, Plaintiff,

v.

Philip COOMBE, David Hicks, Lester DeJean, and Richard Penny, Defendants.

80 Civ. 4417 (RWS).

United States District Court, S. D. New York.

Jan. 23, 1981.

Silas Golden, plaintiff, pro se.

Robert Abrams, Atty. Gen. of the State of N. Y., New York City, for defendants; Paul Jawin, Deputy Asst. Atty. Gen., New York City, of counsel.

## OPINION

SWEET, District Judge.

■ Plaintiff Silas Golden, an inmate at Otisville Correctional Facility ("Otisville"), brought this *pro se* action pursuant to 42 U.S.C. § 1983, claiming a constitutional violation in the opening of his outgoing mail. The complaint seeks damages, declaratory relief and expungement from his disciplinary record of any reference to the misbehavior proceedings arising out of this incident. Defendants are Otisville correction officers Lester DeJean, David Hicks, Lt. Richard Penny and Superintendent Philip Coombe. Liberally construed, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the complaint alleges that the defendants violated prison regulations in opening his mail, that the regulations themselves are unconstitutional, and that he was denied due process in the disciplinary hearing which followed the mail-opening incident.[1] Defendants move to dismiss the action under Rule 12(b)(6), or in the alternative Rule 56 of the Fed.R.Civ.P. For the reasons stated hereunder, the motion will be granted pursuant to Rule 56.

On March 25, 1980, plaintiff alleges, he brought a letter-size manila envelope marked "photo enclosed" and addressed to a Rev. William Hallberry, who was apparently on plaintiff's approved correspondence list, into the prison package room to be weighed and mailed. DeJean, who was on duty at the time, took the envelope, weighed it, and informed plaintiff of the mailing charge. On the following day plaintiff received a Notice of Report, signed by Hicks, reciting violations of prison Rule 2.05—smuggling or attempting to smuggle unauthorized material, and Rule 3.00—any violation of posted rules and procedures. Thereafter plaintiff appeared before the Adjustment Committee. When he asked why his package had been opened without Superintendent Coombe's written authorization, as posted regulations apparently would require, Lt. Penny, who conducted the hearing, stated that he was "not concerned with such." Plaintiff was found to have violated the above-cited rules,[2] and was penalized by "thirty days loss of privileges/restrictions." He was also allegedly told to consider himself lucky that he did not receive a superintendent's proceeding and that in the future his mail would be observed and opened periodically to check for further violations.

According to the affidavits of DeJean and Hicks, who processed plaintiff's package, they adhered to Correctional Services Directive # 4422 (the "Directive") which sets forth the procedures to be followed with respect to inmate correspondence.[3]

---

**1.** Plaintiff also claims, in the most conclusory fashion with no supporting factual allegations, "harassment" and "intimidation." His claim of a "concerted and systematic effort by defendants to deprive plaintiff of constitutionally secured rights," resembling a claim of conspiracy, 42 U.S.C. § 1985(3), is similarly unsupported, and fails for lack of any allegation or demonstration that defendants' actions were "racial, or perhaps otherwise class-based, motivated by invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Harris v. Ward*, 418 F.Supp. 660, 662 (S.D.N.Y.1976).

**2.** The specific infractions found were soliciting funds through the mail, and writing to an individual not on the approved correspondence list.

**3.** Attached to defendants' motion as an exhibit is New York Department of Correctional Serv-

ices Directive # 4422, as revised January 11, 1980, entitled "Inmate Correspondence Program." It governs, by its terms, "Correspondence between an inmate and another person."

*The Directive reads in pertinent part:*

III. GENERAL CORRESPONDENCE PROCEDURES

A. Definition: General Correspondence is mail between an inmate and someone other than a person approved for privileged correspondence (citation omitted). For the purpose of this directive, outgoing mail will not be considered such until it has been placed in the control of the administration for processing.

B. Outgoing Mail:

. . . . .

2. Except for privileged correspondence, all persons to whom mail is sent by an inmate

Specifically, they assert, citing the Directive, that the envelope, being of such weight as to require excess postage, was considered business mail ("correspondence obligating an inmate's funds") and thus had to be handed in unsealed, with an attached disbursement form. Indeed defendants assert, and plaintiff does not dispute, that the envelope was turned over to DeJean in such fashion. DeJean became suspicious because of its weight and bulk and contacted his supervisor, who came to the package room and asked plaintiff whether he would consent to an inspection of the contents for "unauthorized materials." Plaintiff agreed, and himself removed the contents—a letter and six smaller envelopes addressed to other individuals, one of whom was not on plaintiff's approved list. The letter solicited money from the addressee and requested that he mail the six enclosed envelopes. They were opened and it was found that plaintiff had solicited money in three of those letters as well. Lt. Penny asserts that he conducted the disciplinary hearing and decided on the penalty in good faith on the basis of the evidence presented, in accordance with the governing rules and regulations.

■ Summary judgment is appropriate when, resolving all factual disputes and drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978); Fed.R.Civ.P. 56(c). While the burden is on the movant to show the absence of genuine issues of fact on a motion for summary judgment, the solicitousness with which *pro se* pleadings are accepted is not without limits; such a resolution may be appropriate where there has been only a conclusory response, or—as here—no response to the movant's factual showing adverse to the plaintiff's pleading. *Stinson v. Sheriff's Dep't. of Sullivan County*, 499 F.Supp. 259, 262 (S.D.N.Y.1980) (Weinfeld, J.); *Mignone v. Vincent*, 411 F.Supp. 1386, 1388 (S.D.N.Y.1976).

■ Whether or not defendants adhered to the Directive in processing plaintiff's package, there was no violation of plaintiff's constitutional rights. While the bounds of prisoners' constitutional rights in the unfettered flow of mail are not clearly defined, *Wolff v. McDonnell*, 418 U.S. 539, 575–76, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 539 (1974); *Semidey v. Ward*, Dkt. No. 78–954 (S.D.N.Y.1978), under the law and any permissible resolution of the factual allegations, plaintiff's claim does not rise to constitutional dimension.

Plaintiff contends, presumably, that his envelope should have been treated as "general outgoing correspondence" under Sec-

must have received prior approval for the exchange of correspondence . . . .

6. All general outgoing correspondence, with the exception of inmate to inmate correspondence, inmate business mail, and correspondence request mail, may be sealed by the inmate and shall not be opened or inspected, unless authorized in writing by the superintendent. In such cases, there must be reasonable suspicion to believe that the contents of such mail endangers or threatens the safety and security of a facility or the safety and security of another person. The inmate shall be notified when such mail is confiscated.

13. Inmates shall not be permitted to use their correspondence privileges to solicit or otherwise commercially advertise for money, services, goods or correspondence.

D. Free Postage Program:

3. All postage for items such as packages, legal briefs, letters in excess of one ounce . . . will be sent at the expense of the inmate . . . .
E. Business Mail—Outside Purchases:
All correspondence obligating an inmate's funds is considered business mail. Business mail shall be processed as general correspondence except where noted below.

2. All business mail will be unsealed and have attached to it an approved IAS 2706 Disbursement Form.

4. Correspondence of a business nature which does not obligate an inmate's fund (e. g. correspondence to the news media, consumer comments to business, job inquiries, etc.) may be sent to persons or corporations not on the inmate's approved correspondence list. However, they must be sent unsealed and are subject to inspection.

tion III B 6 of the Directive, *see* note 3, and thus not opened or inspected without written authorization by the superintendent; defendants assert that the envelope was properly handled as business mail and as such was, presumably, subject to routine inspection. Whether or not defendants are "correct" in their interpretation and administration of the Directive, their conduct vis-a-vis plaintiff did not violate his constitutional rights.

In *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), the Supreme Court held that the censorship of a prisoner's general correspondence restricts the constitutional rights of the non-prisoner correspondent, and thus, to be justified, must: 1) "further an important or substantial governmental interest unrelated to the suppression of expression" such as security, order or rehabilitation; and 2) "be no greater than is necessary or essential to the protection of the particular governmental interest involved." *Id.* at 412, 94 S.Ct. at 1810–1811. The court in *Wolff v. McDonnell, supra,* in tentatively recognizing some constitutional right of prisoners in their correspondence, noted that "freedom from censorship is not equivalent to freedom from inspection or perusal," and held that "assuming some constitutional right is implicated," prison authorities who had acceded to a rule whereby the inmate is present when mail from attorneys, clearly marked as such, is inspected, had "done all, and perhaps even more, than the Constitution requires." *Id.* 418 U.S. at 575–77, 94 S.Ct. at 2984–2985. *See also Procunier v. Navarette,* 434 U.S. 555, 563–64, 98 S.Ct. 855, 860–861, 55 L.Ed.2d 24 (1978).

The Court of Appeals for this Circuit previously had stated in *Sostre v. McGinnis,* 442 F.2d 178, 201 (2d Cir. 1971) (en banc), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972), a prison mail censorship case:

[W]hen we say there may be cases which will present special circumstances that would justify deleting material from, withholding, or refusing to mail communications with courts, attorneys, and public officials, we necessarily rule that prison officials may open and read all outgoing and incoming correspondence to and from prisoners.

This statement of the law apparently was based in the court's presupposition, according with the later pronouncements by the Supreme Court on the subject, that "[d]iscipline and public order are sufficient interests to justify . . . regulation incidental to the content of prisoners' speech." *Id.* at 199–200. *See also Wilkinson v. Skinner,* 462 F.2d 670 (2d Cir. 1972). In *Morgan v. Montanye,* 516 F.2d 1367 (2d Cir.), *reh. en banc denied,* 521 F.2d 693 (2d Cir. 1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976), an attorney-prisoner mail case, the Court of Appeals reaffirmed the *Sostre* holding sanctioning "the opening and reading of prisoner's [sic] mail, even from an attorney, in the interest of prison security," 516 F.2d at 1372, noted that the rule with respect to attorney-prisoner mail might be in need of reexamination in light of decisions in other circuits and intervening pronouncements by the Supreme Court, *id.* n.8; *Semidey v. Ward, supra,* slip op. at 17 n.5, but held that plaintiff at bar had in any case not demonstrated injury from the complained-of instances of opening of letters from his attorney (including only one letter clearly marked as such). *See also Cofone v. Manson,* 409 F.Supp. 1033, 1042–43 (D.Conn.1976); *Centeno v. Dep't. of [Correspondence of Attica] Corrections [Facility],* 408 F.Supp. 1117 (S.D.N.Y.1976). *Cf. Morgan v. Montanye,* 521 F.2d 693 (2d Cir. 1975) (Oakes, J., dissenting from denial of rehearing en banc).

In *United States ex rel. Wolfish v. Levi,* 428 F.Supp. 333 (S.D.N.Y.1977), *aff'd. in part and rev'd. in part,* 573 F.2d 118 (2d Cir. 1978), *rev'd.,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), this court rejected asserted tendered justifications for a prison requirement that all inmates' outgoing mail be placed unsealed in the mailbox for reading at will by correction personnel, and, relying on various authority from other jurisdictions, ordered that inmates "be freed to seal outgoing mail, subject only to (a) inspection by electronic or other devices to

detect hidden objects, without opening the letters, and (b) the power to read contents, in the sender's presence upon a showing of good cause." The court also upheld, citing *Wolff v. McDonnell, supra,* the prison rule allowing legal mail to be opened to check for contraband, but not read, in the presence of the inmates; incoming non-legal mail could be opened and inspected—but not read—without probable cause or the recipient's presence. *Id.* at 343–44. The Court of Appeals, affirming in part and reversing in part the lower court's multipronged directive to the administration of the Metropolitan Correctional Center, asserted inmates' First Amendment right in correspondence, and without addressing the subject in depth, endorsed the conclusion that mail can be inspected for contraband, and for good cause in the case of outgoing mail, read. This holding seems to be somewhat of a retreat from *Sostre*'s blanket approval of the practice of reading all incoming and outgoing mail, *see Semidey v. Ward, supra,* slip op. at 18, n.6, despite its reference to *Sostre* for direct support, 573 F.2d 118, 130 & nn.27 & 28. The Supreme Court, while rejecting most of the burdens placed by the courts below on prison authorities, did not address the unchallenged injunction on "the reading and inspection of inmates' outgoing and incoming mail except under specified circumstances." 441 U.S. at 528, n.9, 99 S.Ct. at 1868, n.9.

■ Thus the law in this circuit appears to be that, consistent with the Constitution prisoners' general outgoing mail may be inspected for contraband, and for good cause, read; incoming mail may routinely be read. *See Semidey v. Ward, supra; see also Stinson v. Sheriff's Dep't., supra,* at 264. There has been no clear statement by the Court of Appeals of prisoners' entitlement to send sealed mail which may be opened and read, for cause, only in their presence, as was ordered by the trial court in *Wolfish, supra.*

■ Here, the court is confronted with the uncontradicted contention of defendants that plaintiff's envelope was submitted unsealed, and that upon the defendants'

suspicion being aroused, plaintiff himself agreed voluntarily to remove the contents for inspection. It is not clear who then opened the six smaller envelopes, but given the result of the initial inspection (and the presence of the inmate, no less), there was good cause to inspect and read everything. Further, the Directive itself is not inconsistent with any clearly enunciated constitutional requirement. The section on "general outgoing correspondence" affords inmates a good deal more protection than is mandated by the case law. That the state chooses to go beyond what the law requires is of no concern to this court. *See Wright v. McMann,* 460 F.2d 126, 132 (2d Cir. 1972). Nor are the rules with respect to "inmate business mail" unconstitutional. While all such mail apparently is subject to inspection, *see* note 3, such a precaution is justified by the authorities' interest in an inmate's obligation of his funds. It is not at all clear that the Directive authorizes the routine reading of all so-called "business mail"; nor does this case present the issue of authorities' applying their perhaps over-inclusive categorization of "business mail" to open and read at will, outside the inmates' presence, what may be only unusually bulky personal letters. Thus there is no need to address the constitutional question potentially arising under such circumstances.

■ Finally, with respect to this claim, even if the facts were such as to support the finding of a violation of a constitutional right of plaintiff, and the good faith defense were found not to apply, *see Procunier v. Navarette, supra,* the court would conclude that no damage had been demonstrated from this one incident. *Stinson v. Sheriff's Dep't., supra; Morgan v. Montanye,* 516 F.2d at 1370–71.

■ Plaintiff also raises a due process claim with respect to the disciplinary hearing which followed the mail incident. The claim is conclusory, and Lt. Penny affirms that he conducted the hearing in good faith and in accordance with applicable Department rules and regulations. Whatever factual dispute there may be here, even the

minimal procedural safeguards required to comport with due process in an inmate proceeding for "major misconduct" involving substantial deprivations such as loss of good time credits or confinement, *see Wolff v. McDonnell, supra,* 418 U.S. at 564–70, 94 S.Ct. at 2978–2982; *see also Sostre v. McGinnis, supra,* at 203; *Cofone v. Manson, supra,* at 1043, do not inhere for the imposition of lesser penalties such as loss of privileges. *Wolff v. McDonnell, supra,* 418 U.S. at 572 n.19, 94 S.Ct. at 2982 n.19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976); *McKinnon v. Patterson,* 568 F.2d 930, 936–37 (2d Cir. 1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Mawhinney v. Henderson,* 542 F.2d 1, 3–4 (2d Cir. 1976). Therefore, plaintiff has not stated a claim.

For all of the foregoing reasons, the complaint is dismissed. Submit judgment on notice within ten (10) days.

IT IS SO ORDERED.