**Billy BILLUPS, Plaintiff,**

v.

**NEW YORK STATE, et al., Defendants.**

No. 85 Civ. 180.

United States District Court,
N.D. New York.

March 21, 1995.

Billy Billups, pro se.

Mary Ellen Clerkin, Asst. Atty. Gen., Office of Atty. Gen., Albany, NY, for defendants.

## ORDER AND OPINION

BAER, District Judge.

Plaintiff Billy Billups, *pro se,* originally initiated this civil rights lawsuit along with two other plaintiffs, Collin Fearon and Bradshaw Samuels, by complaint filed February 7, 1985. Plaintiffs brought a multitude of claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985(2) and (3), 1986 and 2000d seeking declaratory, injunctive and compensatory relief from fifty-four defendants for certain alleged violations of their federal rights committed at Clinton Correctional Facility ("Clinton") during the period 1981 through 1983.

On May 5, 1985, defendants moved to dismiss the complaint, or in the alternative, for summary judgment. By Order dated April 8, 1987, Judge Munson of the Northern District of New York, adopted the September 26, 1986 Report–Recommendation of Magistrate Conan in its entirety, and granted summary judgment as to all but ten state defendants: Eugene S. LeFevre, Superintendent of Clinton; J.W. Curran, Deputy Superintendent of Security Services; D.A. McGuire, Deputy Superintendent of Program Services; T. Howard, Vocational School Supervisor; Lee Atkinson, Vocational School Instructor; Crane R. Rock, Substitute Vocational School Instructor; P. Welch, Chairperson of the Program Committee; R. Cox, Correspondence Supervisor; and J.J. Woods and D.P. Maggy, Correctional Officers.

On November 21, 1991, the district court sent notice to plaintiffs, pursuant to Local Rule 11, that the action would be dismissed against the remaining defendants for failure to prosecute unless, within twenty-one days of receipt of the notice, the plaintiffs showed good cause why the action should be preserved. Because the court did not receive a response, it dismissed the case by order dated January 6, 1992, with judgment entered on January 9, 1992.

Plaintiff Billups appealed, maintaining that he never received the Rule 11 notice. By summary order dated October 21, 1992, the Second Circuit reversed the dismissal as to Billups, and remanded the case to the district court so that another Local Rule 11 notice could be mailed to him. On December 7, 1992, the district court sent a notice to Billups, to which he timely responded.

Two claims now remain and are the subject of this motion: (1) the defendants' alleged improper handling of Billups' mail; and (2) the defendants' removal of Billups from a vocational program in alleged retaliation for his use of the law library.

Billups moves for summary judgment pursuant to Fed.R.Civ.P. 56(a). The ten remaining defendants cross-move for summary judgment.

For the reasons that follow, Billups' motion is DENIED, and defendants' motion is GRANTED.

## I. *Facts*

Billups was incarcerated at Clinton from September 1980 until March 1984. The relevant facts for purposes of Billups' remaining claims, which are not in dispute, consist of the following two unrelated events.

Plaintiff's first claim, although stated in less than artful prose, can reasonably be read to allege that certain defendants improperly handled his legal mail and deprived him of his constitutional right to access to the courts. Billups filed a grievance on August 20, 1981, claiming that he mailed a letter to an attorney bearing the legend "privileged and confidential." The letter was improperly addressed and subsequently returned to Billups marked "undeliverable," but only after prison officials opened and inspected it for contraband.

Superintendent LeFevre denied Billups' grievance by Response Memorandum dated September 11, 1981, stating that incoming mail being returned to its sender was not recognized as a privileged correspondence under Directive # 4421 and, therefore, could be opened out of Billups' presence. Had the letter been sent by a person designated as a privileged correspondent (e.g., attorney, judges, courts and commissioners, etc.), and not by Billups himself, Billups' presence would have been required.

On October 28, 1991, the CORC upheld Superintendent LeFevre's determination. Plaintiff appealed the denial of his grievance to the Central Office Review Committee ("CORC"), which sustained the denial.

Plaintiff's second cause of action alleges that his use of the law library resulted in retaliatory dismissal from his assignment in the vocational welding shop program. Billups entered the program on January 18, 1982. According to his November 3, 1982 progress report, Billups showed interest in and a propensity for the subject. In that report, his instructor commented that Billups was one of the best students in the class. On March 22, 1983, Billups received another favorable progress report.

In his next report, dated August 22, 1983, Billups received a poor progress report and a recommendation that his incentive allowance be decreased from $1.20 to $1.10. The instructor attributed Billups' decline in performance to his newly developed practice of going to the law library. During this period, Billups' absentee rate grew to 50%. Because of his irregular attendance, he was removed from the class.

On September 9, 1983, Billups filed a grievance requesting that he be reassigned to the welding shop and given a pay increase. After investigating the allegations, Superintendent LeFevre denied the grievance on the ground that Billups' attendance in the welding program was deficient.

Billups appealed LeFevre's decision to the CORC. The CORC upheld the denial of Billups' grievance, noting his poor attendance and the fact that a waiting list existed for enrollment in the welding shop. Billups then appealed the CORC decision to the State Commission on Correction ("SCOC"). The SCOC recommended denial of the grievance, which the Commissioner's office accepted.

## II. *Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(c). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510), *cert. denied*, —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### III. *Discussion*

#### A. *Interference with Legal Mail*

■ Plaintiff's claim regarding interference with his legal mail is meritless. While this Court is fully aware that the protections of the constitution do not end at the prison walls, *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989), the Supreme Court has acknowledged that "[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights. . . ." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977); *see Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). Accordingly, while inmates have a constitutional right to receive and send mail, including legal mail, *Heimerle v. Attorney General,* 753 F.2d 10, 12–13 (2d Cir.1985), interference with a prisoner's mail is allowed to the extent that it is "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). Legitimate penological interests include preserving prison security and maintaining order and discipline. *Security and Law Enforcement Employees v. Carey,* 737 F.2d 187, 203 (2d Cir.1984). Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh,* 490 U.S. at 408, 109 S.Ct. at 1879 (citation omitted).

■ Under the version of prison directive 4421 effective when this cause of action accrued, prison officials could open an inmate's mail outside of the inmate's presence for security purposes, unless it was recognized as a privileged correspondence—such as mail sent to inmates from attorneys, judges, courts or commissioners. In those instances, the mail could only be opened in the inmate's presence. Billups contends that the letter at issue here was privileged because he addressed it to an attorney. Upon its return due to improper addressing, he argues that directive 4421 required that the letter be inspected in his presence.

Directive 4421 was designed to further the prison institution's legitimate penological interests in security and order. Under the directive, incoming mail returned to the sender was not recognized as privileged under the directive as it was not *from* an attorney, judge, court, or commissioner. Accordingly, because the defendants acted within the boundaries of the directive, the opening of Billups' letter did not infringe upon his constitutional rights.

■ Moreover, the privilege of qualified immunity provides an additional reason for denying this claim. In actions brought under Section 1983, qualified immunity is an affirmative defense that must be pleaded by the defendant officials. *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *Carey,* 737 F.2d at 210. Once qualified immunity is pleaded, as it has been in this action, public officials performing discretionary functions are protected from personal liability unless their conduct "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (citations omitted). However, "the boundaries of the supposed 'right' must be sufficiently definite so that the official understood that his actions violated it. . . ." *Eng v. Coughlin,* 858 F.2d 889, 895 (2d Cir.1988).

■ At the time this cause of action accrued, an inmate did not have a clearly established right to be present when prison officials open his returned mail, notwithstanding the fact that the inmate addressed it to an attorney. Accordingly, because the defendants had no forewarning that opening Billups' letter would violate his rights, the doctrine of qualified immunity shields them from liability.

#### B. *Retaliation*

■ Billups' claim that he was removed from the welding program in retaliation for using the library is equally meritless. Inmates do not have a constitutional right to

any particular job or vocational program. *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir. 1987); *Lane v. Reid,* 575 F.Supp. 37, 39 (S.D.N.Y.1983). Prison officials, however, may not retaliate against an inmate because he has exercised his constitutional right to access to the courts. *Mawhinney v. Henderson,* 542 F.2d 1, 3 (2d Cir.1976); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (prison officials' retaliation against inmate due to inmate's exercise of his constitutional rights states a valid claim for relief). Yet, in order to prevail on a claim for retaliation for the exercise of constitutional rights, plaintiff must show that the allegedly retaliatory action would not have taken place but for the exercise of such rights. *Jones v. Coughlin,* 696 F.Supp. 916, 920 (S.D.N.Y. 1988). Thus, if an action is taken "on the basis of both valid and invalid motivations, [the action] is not constitutionally tainted by the invalid motive if the action in any event would have been taken on the constitutionally valid basis." *Sher v. Coughlin,* 739 F.2d 77, 82 (2d Cir.1984) (citing *Mt. Healthy City School Dist. Brd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

■ Here, nothing in the record supports Billups' contention of retaliation. Even after taking extensive discovery, Billups has no more factual basis for his claim than the existence of an adverse administrative decision. As the Second Circuit has held, conclusory statements do not create a sufficient foundation on which to base a retaliation claim. *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983).

Clearly, Billups' inadequate attendance rate, coupled with a waiting list for enrollment, was a valid reason for removing him from the program. Although Billups unquestionably had a right to spend time in the law library, he did not have a concomitant right to preserve his place in a vocational program that he did not regularly attend, thereby depriving another inmate of an opportunity to learn a trade.

## IV. *Conclusion*

For the foregoing reasons, Billups' motion for summary judgment is DENIED, and de-fendants' motion for summary judgment is GRANTED.

SO ORDERED