Frank MINIGAN, Jr., Plaintiff,

v.

Frank IRVIN, D. Wolff, and T. Murray, Defendants.

No. 95–CV–99H.

United States District Court, W.D. New York.

Aug. 18, 1997.

Frank Minigan, Jr., Alden, NY, pro se.

Guy C. Giancarlo, Asst. Atty. Gen., Buffalo, NY, for Defendants.

## DECISION AND ORDER

HECKMAN, United States Magistrate Judge.

The parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment, in accordance with 28 U.S.C. § 636(c). Plaintiff and defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, plaintiff's motion is denied, and defendants' motion is granted.

## *BACKGROUND*

On November 3, 1994, while he was confined at the Wende Correctional Facility maintained by the New York State Department of Correctional Facilities ("DOCS"), plaintiff was served a misbehavior report written by Corrections Officer D. Daniels. The misbehavior report stated that, "[a]s a result of an investigation it has been determined that [plaintiff] has violated Rule 180.11 [1] by sending letters out through correspondences with instructions to Mrs. Frank Minigan to re-mail letters to Judge Louise Slaughter.[2] Also, included with these letters was inmate Minigan's inmate I.D. card, thus resulting in Rule violations 114.10 [3] and 116.10" [4] (Ex. attached to Item 12). The misbehavior report indicated that the incident occurred on November 2, 1994 (*id.*).

On February 8, 1995, plaintiff filed this action pursuant to 42 U.S.C. § 1983. He alleged that defendants violated his first

1. Rule 180.11 of the DOCS Standards of Inmate Behavior Institutional Rules of Conduct provides:

   Inmates shall comply with and follow the guidelines and instructions given by staff regarding facility correspondence procedures pursuant to requirements of departmental Directive Nos. 4422 and 4421 (7 NYCRR Parts 720 and 721).
   7 N.Y.C.R.R. § 270.2(B)(26)(i).

2. The court takes notice that, at all times relevant herein, Hon. Louise Slaughter was and is a member of the United States House of Representa-

tives, representing the 28th Congressional District of New York.

3. Rule 114.10 provides:

   Inmates shall not smuggle or attempt to smuggle or solicit others to smuggle any item in or out of the facility or from one area to another.
   7 N.Y.C.R.R. § 270.2(B)(15)(i).

4. Rule 116.10 provides:

   Inmates shall not lose, destroy, steal, misuse, damage or waste any type of State property.
   7 N.Y.C.R.R. § 270.2(B)(17)(i).

amendment rights by opening his outgoing personal mail to his wife. He also alleged that defendants violated his right to due process by confining him to keeplock for 13 days pending a disciplinary hearing on the misbehavior report (*see* Item 1). He sought compensatory damages in the amount of $1,000,-000.00.

On June 29, 1995, defendants moved pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the complaint for failure to state a claim upon which relief can be granted. In a decision and order dated February 14, 1996, this court granted defendants' motion to the extent it requested dismissal of plaintiff's due process claim, but denied defendants' motion to the extent it requested dismissal of the first amendment claim. *See Minigan v. Irvin,* 1996 WL 80176 (W.D.N.Y. February 15, 1996).

Both parties now move for summary judgment. According to plaintiff, the undisputed facts show that defendants interfered with his outgoing mail, in violation of his first amendment rights. Defendants contend that the opening of plaintiff's outgoing mail did not violate plaintiff's first amendment rights. Defendants also claim that they are entitled to qualified immunity.

## DISCUSSION

### I. § 1983: First Amendment Mail Obstruction.

■ It is well-established under Supreme Court and Second Circuit holdings that prison inmates have a first amendment right in the free flow of their mail, both incoming and outgoing. *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Heimerle v. Attorney General,* 753 F.2d 10 (2d Cir.1985); *France v. Coughlin,* 1987 WL 10724 (S.D.N.Y.1987). In order to accommodate this right, prison restrictions on inmate mail must be reasonably related to prison interests in security and order. *Procunier v. Martinez, supra,* 416 U.S. at 412, 94 S.Ct. at 1810–11; *Heimerle, supra,* 753 F.2d at 12; *see also Davidson v. Scully,* 694 F.2d 50 (2d Cir.1982); *Wolfish v. Levi,* 573 F.2d 118 (2d Cir.1978), *rev'd in part on other grounds sub nom. Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ Permissible restrictions on an inmate's outgoing legal mail, a category which implicates the right of access to the courts, are extremely limited. *Washington v. James,* 782 F.2d 1134 (2d Cir.1986). With respect to non-legal outgoing mail, "prison officials may open or read it but only if there is 'good cause.' " *France v. Coughlin, supra,* 1987 WL 10724 at *2 (quoting *Heimerle, supra* ) (other citations omitted).

■ In this case, the affidavits and exhibits submitted in support of defendants' motion for summary judgment establish that plaintiff's outgoing mail was opened for good cause pursuant to legitimate prison regulations and directives. DOCS Directives 4421 and 4422 establish the prison's policy and procedure for inspection of outgoing inmate correspondence. The constitutionality of this policy has been upheld repeatedly by courts in this circuit. *See Webster v. Mann,* 917 F.Supp. 185, 187 (W.D.N.Y.1996) (Directive 4422 reasonably related to legitimate penological interests); *Billups v. New York State,* 885 F.Supp. 38, 41 (N.D.N.Y.1995) (Directive 4421 designed to further prison's legitimate penological interests in security and order); *France v. Coughlin, supra,* 1987 WL 10724, at *3 (addressing constitutionality of Directive 4422); *Golden v. Coombe,* 508 F.Supp. 156, 160 (S.D.N.Y.1981) (directive allowing general outgoing mail to be inspected for contraband and, for good cause, read, "affords inmates a good deal more protection than is mandated by the case law").

According to the affidavit of defendant Timothy J. Murray, who was the Deputy Superintendent in charge of the correspondence at the Wende facility during the relevant time period, plaintiff's letter "was deemed to have insufficient postage by the Correspondence Department" (Item 33, ¶ 5). The letter was re-classified as incoming mail in accordance with Directive 4421(III)(B)(7) (*id,* ¶ 6 & Ex. A). It was opened and inspected for contraband in accordance with Directive 4422(III)(G)(1) (*see id.,* Ex. B).

Upon inspection, it was discovered that the letter contained a letter to Rep. Slaughter, which was properly identified by the Correspondence Department as "written material

in outgoing mail not specifically intended for the addressee identified on the exterior of the envelope . . .," prohibited by Directive 4422(III)(B)(19) (*id.*). This portion of Directive 4422 addresses the practice of "kiting," which involves unauthorized correspondence between inmates (Item 33, Murray Aff., ¶¶ 13–15). Defendants have articulated several legitimate penological objectives for prevention of unauthorized inmate communications, such as protecting against the exchange of contraband or weapons, protecting the identity of confidential informants, and discouraging inmates from attempting to influence witnesses called to testify at disciplinary hearings (*id.*).

Accordingly, I find that Wende personnel had good cause, in the interest of prison order and security, and in the interest of ensuring compliance with legitimate prison regulations and directives regarding unauthorized inmate correspondence, to inspect and open plaintiff's letter addressed to his wife. This interference with plaintiff's nonprivileged outgoing mail was within constitutional bounds. *See Billups v. New York State, supra,* 885 F.Supp. at 41 (opening of legal mail, returned for improper addressing, outside of inmate's presence did not violate his constitutional rights); *France v. Coughlin, supra,* 1987 WL 10724, at *3 (inspection and opening of outgoing non-legal mail outside of inmate's presence "was within constitutional bounds").

In addition, there is nothing in the record to suggest that this single incident of opening plaintiff's nonprivileged mail outside of his presence caused him to suffer any damage. *Cf. Morgan v. Montanye,* 516 F.2d 1367, 1370–71 (2d Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976);[5] *Walton v. Waldron,* 886 F.Supp. 981, 986 (N.D.N.Y.1995) (mail obstruction claim requires showing of harm).

Accordingly, defendants have met their burden of establishing that there are no genuine issues of material fact in dispute as to whether their conduct violated plaintiff's first

amendment rights, and plaintiff "has failed to make a sufficient showing on an essential element of h[is] case with respect to which [ ]he has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Defendants are therefore entitled to summary judgment dismissing the complaint as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); Fed.R.Civ.P. 56(c).

## II. Qualified Immunity.

Defendants are also entitled to summary judgment on the ground of qualified immunity. The doctrine of qualified immunity protects government officials from liability for money damages in actions arising out of performance of their discretionary functions. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As a general rule, government officials are immune from liability for money damages under 42 U.S.C. § 1983 unless they violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id; Allen v. Coughlin,* 64 F.3d 77, 81 (2d Cir.1995).

In determining whether a right is "clearly established," the court considers: (1) whether the right was defined with "reasonable specificity" at the time of the alleged conduct, (2) whether the decisional law of the Supreme Court and the Second Circuit support the existence of the right, and (3) whether a reasonable defendant official would have understood his acts were unlawful. *Allen, supra; Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993); *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992). Even when such rights are clearly established, qualified immunity will protect a government official "if it was objectively reasonable for [the official] to believe that his acts did not violate those rights." *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). "The objec-

---

**5.** Plaintiff claims that on November 13, 1994, he attempted to send another letter to his wife, but the letter was returned to him unopened on November 14, 1994. However, the record establishes that this letter was returned because it was improperly submitted with an "IAS 2706" disbursement form. *See* Directive 4422(III)(D)(1)(d) (setting forth circumstances for purchasing postage stamps by attaching form IAS 2076) (Item 33, Ex. B).

tive reasonableness test is met—and the defendant is entitled to immunity—if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

 Thus, a defendant is entitled to summary judgment on qualified immunity grounds when, "looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ]," *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir.1986), *quoted in Robison, supra,* 821 F.2d at 921, the court determines that no reasonable jury could conclude that it was objectively unreasonable for the defendant to believe that his or her conduct or actions did not violate an established federally protected right. *Lennon, supra,* 66 F.3d at 420 "In other words, if any reasonable trier of fact could find that the defendants' actions were objectively unreasonable, then the defendants are not entitled to summary judgment." *Id.*

In this case, as discussed above, at the time of the events complained of the law in the Second Circuit "was, and remains, that prison officials may permissibly inspect or read outgoing mail, especially non-legal mail, if there is 'good cause.'" *France v. Coughlin, supra,* 1987 WL 10724, at *3 (quoting *Heimerle v. Attorney General, supra,* 753 F.2d at 13 n. 5); *see also Golden v. Coombe, supra,* 508 F.Supp. at 158–60. Here, "good cause" was established when the letter was reclassified as "incoming" mail because of insufficient postage, in accordance with DOCS directives. Thus, at the time the mail incident complained of occurred, defendants at the very least could reasonably have believed that the inspection and opening of plaintiffs letter was well within constitutional bounds because of the established rationale for the action.

Accordingly, no reasonable trier of fact could find that it was objectively unreasonable for the defendants to believe that their actions violated plaintiff's first amendment rights. Defendants are therefore entitled to summary judgment dismissing the complaint on the ground of qualified immunity.

*CONCLUSION*

For the foregoing reasons, plaintiff's motion for summary judgment (**Item 38**) is DENIED. Defendants' motion for summary judgment (**Item 28**) is GRANTED, and the complaint is dismissed. The Clerk of the Court is directed to enter judgment in favor of defendants.

**SO ORDERED.**