**Ronald DAVIDSON, Appellant,**

v.

**Charles SCULLY, et al., Appellee.**

**No. 242, Docket 81–2439.**

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1982.

Decided Nov. 26, 1982.

Jonathan M. Jacobson, Lord, Day & Lord, New York City (Frank R. Jakes, student, New York University School of Law, Gabrielle E. Simms, student, Harvard Law School, of counsel), for appellant.

Robert Abrams, Atty. Gen., State of N.Y., New York City (Gerald J. Ryan, Daniel Kinburn, Asst. Attys. Gen., New York City, of counsel), for appellee.

Before LUMBARD, OAKES and WINTER, Circuit Judges.

OAKES, Circuit Judge:

This appeal is by an inmate protesting prison regulations regarding outgoing mail. The pro se complaint, which sought damages and an injunction in respect to four letters that were not allowed sealed exit, was dismissed by the United States District Court for the Southern District of New York, Charles E. Stewart, Judge, on the authority of *Sostre v. McGinnis,* 442 F.2d 178, 199–200 (2d Cir.1971) (prison authorities may open all incoming and outgoing mail to and from prisoners), *cert. denied sub nom. Oswald v. Sostre,* 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972). Because the prison regulations are irrational as applied to the correspondence here in question and the authority of *Sostre* in respect to outgoing mail has been eroded, we reverse and remand. *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *United States ex rel. Wolfish v. United States,* 428 F.Supp. 333, 343 (S.D.N.

Y.1977), *aff'd sub nom. Wolfish v. Levi,* 573 F.2d 118, 130 (2d Cir.1978), *rev'd in part on other grounds sub nom. Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

According to the complaint, Ronald Davidson, an inmate at Green Haven Correctional Facility in Stormville, New York, sought on September 26, 1980 to mail four sealed letters, three to public officials or agencies and one to a well known civil liberties group. The letters were addressed to the Army Board for Corrections of Military Records, attention Legal Officer, the envelope bearing the words "Legal Mail—Private"; Commanding Officer, United States Army Reserve Components Personnel Center (USARCPC), attention Legal Officer, the envelope bearing the words "Legal Mail"; Judge Advocate General, Fort Dix, New Jersey; and, in an envelope bearing a First Class Permit Number and marked "Business Reply Mail," the American Civil Liberties Union at 132 West 43rd Street, New York, N.Y. The letters were returned unmailed to Davidson with the notation "do not seal." Davidson tried to mail the letters a second time, attaching to them a note to defendant Edward Bohlinger, head of the Green Haven Correspondence Department, explaining that the letters were legal letters and as such privileged. They were not sent. On September 30, 1980, Davidson wrote defendant Charles Scully, Superintendent of Green Haven, en-

closing the letters and asking that the matter be investigated and that the letters be mailed either to the addressees or to Davidson's attorney, David Lewis of the Legal Aid Society in Manhattan. The matter was referred to Deputy Superintendent Berry with no response. On October 16, a correction counselor advised Davidson that the matter had been referred to him that day and he had referred it to the Correspondence Department "for clarification of their action." On October 21, the "clarification" was communicated by the correction counselor as follows:

> The Correspondence Dept. does not consider any of the three letters to fall under the category of "legal" mail. Therefore all of the three letters will have to be unsealed if they are going to be mailed. Specifically, as I was advised, the letter to the ACLU would be considered "legal" mail if it were addressed to a particular attorney. Similarly, in terms of the mail addressed to the military, these particular letters have been deemed by the Correspondence Dept. *not* to be "legal" mail.

The letters had been defaced and some of them were unsealed when returned. This suit under 42 U.S.C. § 1983 followed.

We note the existence of a Department of Correctional Services Directive # 4421 dated June 18, 1979, defining privileged mail not to include any of the four letters [1] though this was amended on Janu-

---

1. Directive # 4421 dated March 26, 1979 provided in pertinent part:

   I. *PURPOSE:*
   This directive describes the policies, regulations, and procedures governing "privileged" correspondence to or from inmates.
   II. *DEFINITION:*
   Privileged correspondence is mail between an inmate and any one of the following:
   1. Attorneys shall be defined as Legal professionals, or at least law students qualified to render legal advice by virtue of their professional training. The exchanged correspondence must be limited to an attorney who has established an attorney-client relationship or to an attorney who has been specifically requested by an inmate to exercise his professional judgment.
   2. Judges and clerks of federal, state, and local courts.

   3. The Commissioner of the Department of Correctional Services, his Central Office staff, and Superintendents.
   4. The President, Vice-President, and Attorney General of the United States.
   5. Any member of the United States Congress.
   6. The Governor, Lieutenant Governor, and Attorney General of any State, and any member of the New York State Legislature.
   7. Members and staff of the State Commission of Corrections.
   8. Chairman of the New York State Board of Parole, Members and staff of the Board of Parole, Executive Director of the Division of Parole and staff, and any Parole Officer.
   9. Inmates who are aliens may correspond with an official of the embassy or consulate of the country of which he is a citizen.

ary 14, 1982 to permit the mailing of the ACLU letter as privileged.[2] Appellees argue mootness as to that letter, but money damages as well as injunctive relief are in issue unless otherwise precluded and, regardless of the merits of that issue, the argument does not cover the other three letters. Appellees contend that they are immune from damages because they acted in good faith based upon departmental policy and the existing case law of *Sostre v. McGinnis, supra. See Harlow v. Fitzgerald,* —— U.S. ——, —— & n. 30, 102 S.Ct. 2727, 2738 & n. 30, 73 L.Ed.2d 396 (1982); *Scheuer v. Rhodes,* 416 U.S. 232, 247–48, 94 S.Ct. 1683, 1691–1692, 40 L.Ed.2d 90 (1974). However that may be, immunity is an affirmative defense and does not go to the existence of a § 1983 cause of action. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).

■ Appellees argue that prison regulations would have permitted Davidson to send these letters if he had followed the prison's administrative procedure, set out in pertinent part in the margin,[3] for mailing

non-privileged matter. These regulations require the cumbersome procedure of mailing a form to the addressee with whom the prisoner wants to correspond, having the addressee mail the form back and then having the inmate seek to mail his "correspondence request" mail sealed. The regulation does not permit the prison inmate to state on the form his reasons for requesting permission to correspond. If sealed exit is as easily secured as appellees suggest it is, the procedure is simply a useless clog on prison inmates' right of access to public agencies and officials. The appellees have not argued that material mailed to public officials or agencies is likely to impede the rehabilitation process or disrupt institutional security or order. *See Pell v. Procunier,* 417 U.S. 817, 822–23, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974) (prisoners retain only those rights not inconsistent with their status as prisoners or "legitimate penological objectives of the corrections system"). The state simply asserts that the practice should be upheld as a "rational response to the perceived security need." Appellee's Br. at 4.

10. American Indians may correspond with certain Chiefs of the Six Nations as approved by the Director of Ministerial Services.

**2.** Directive # 4421 was amended extensively on January 14, 1982, one such amendment including the addition of a new paragraph 11 in Part II, note 1 *supra,* reading as follows:

11. Organizations which are engaged in legal affairs including but not limited to: Volunteer Attorney Service Team (VAST); Prisoners' Legal Services of New York (PLS); Prisoners' Rights Project of the New York City Legal Aid Society (PRP); local legal aid societies; public defender offices; legal services offices; American Civil Liberties Union; and centers providing support services and legal advice, i.e., Center on Law and Pacifism, National Center for Law and Social Policy, National Center for Immigrants' Rights, National Conference for Black Lawyers, The Center for Constitutional Rights, etc.

**3.** Directive # 4422 dated March 26, 1979 pertaining to nonprivileged outgoing mail provided in pertinent part as follows:

2. Except for privileged correspondence, all persons to whom mail is sent by an inmate must have received prior approval for the exchange of correspondence according to the procedures contained in this directive.

3. An up-to-date list containing the names and addresses of persons approved for correspondence shall be maintained by each facility correspondence unit. The list will be referenced in checking an inmate's outgoing mail. All unauthorized correspondence will be returned to the sender.

. . . .

5. Correspondence Requests: Form 3412 "REQUEST TO CORRESPOND, VISIT AND PLACE COLLECT TELEPHONE CALLS" will be sent by the inmate to persons (other than inmates) with whom he wishes to correspond and who have not received such authorization. No letter shall be enclosed with this request. The envelope containing the request must be unsealed to permit verification by the correspondence unit staff.

6. All general outgoing correspondence, with the exception of inmate to inmate correspondence, inmate business mail, and correspondence request mail, may be sealed by the inmate and shall not be opened or inspected, unless authorized in writing by the Superintendent. In such cases, there must be reasonable suspicion to believe that the contents of such mail endangers or threatens the safety and security of a facility or the safety and security of another person. The inmate shall be notified when such mail is confiscated.

Although the Supreme Court upheld a prison regulation authorizing the opening of *incoming* attorney mail in the prisoner's presence in *Wolff v. McDonnell,* 418 U.S. 539, 577, 94 S.Ct. 2963, 2985, 41 L.Ed.2d 935 (1974),[4] *outgoing* mail addressed to government agencies does not implicate the same security interests. An argument that significant security interests would be jeopardized by abandonment of the prison's procedure would not be persuasive in any event. The only "contraband" that is difficult to detect without opening a letter is "restricted correspondence" (e.g., correspondence with other inmates involving illegal activity) that the prisoner hopes the addressee will surreptitiously forward. But we agree with the Fifth Circuit's finding that:

> The content of ... outgoing mail [addressed to courts, prosecuting attorneys, parole or probation officers, etc.] cannot, except on the most speculative theory, damage the security interests of jail administration .... As a general proposition, it must be assumed that mail addressed to government offices or licensed attorneys containing contraband or information about illegal activities will be treated by the recipients in a manner that cannot cause harm.

*Taylor v. Sterrett,* 532 F.2d 462, 474 (5th Cir.1976); *see also id.* at 474 n. 17 (noting with approval the Federal Bureau of Prisons' policy of stamping outgoing, unopened mail with notice that addressee is to return mail if it contains other correspondence for forwarding). Furthermore, whatever slim risk to prison security might be posed by allowing sealed legal mail to exit the prison unmolested will not be materially reduced by the prison's procedures. Anyone likely to help the prisoner escape will send back a response accepting correspondence—on official letterhead if the prison so requires. After the confederate returns the form, the prisoner may send sealed escape plans to his heart's content.

The fact that the rule is useless, however, does not mean that it is harmless: delay in communication caused by the prison's Rube Goldberg rules may itself be prejudicial to a prisoner's rights if, for example, it prevents the timely filing of legal documents. *See, e.g.,* Fed.R.Crim.P. 35 (time for correction or reduction of sentence). Furthermore, the rule is likely to prevent some important correspondence altogether. The persons least likely to answer the correspondence request form (in any reasonable amount of time) are professionals, government agencies and other institutions having no previous connection to the prisoner. It is all too easy to imagine the likely bureaucratic response to a form that simply asks, without explanation, whether the recipient would like to receive correspondence from a perfect stranger incarcerated in state prison. Prisoners' attempts to correspond with the outside world have an appreciably diminished chance of eliciting a response if their initial requests state no reason for requesting correspondence. The state's evanescent security interests defended here hardly justify "infringement of so basic a right" as the "right to receive and send mail." *Wolfish v. Levi,* 573 F.2d at 130–31. Moreover, correspondence to public officials and agencies may be essential to the exercise of an inmate's right of access to the courts. *Cf. Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72 (1977) (state has an obligation to respect "the fundamental constitutional right of access to the courts ... by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law"). The appellee's argument that this case presents no issue of access denial simply begs the question. If prison officials are able to deny inmates free access to public officials and agencies, the fundamental right recognized in *Bounds* is restricted just as surely as if the government denied prisoners access to traditional legal materials. In many cases an inmate's claim might be substantially furthered by

---

**4.** It should be noted, however, that the Court stated that the regulations provided "all, and perhaps even more [protection], than the Constitution requires." *Id.* at 577, 94 S.Ct. at 2985.

information or aid available through government agencies.[5]

It is true that *Sostre's* holding that prison authorities may open all outgoing as well as incoming correspondence has not been expressly limited by subsequent Second Circuit decisions, though *Sostre* itself carefully noted that *"[s]ui generis* in both logic and the case law, however, are letters addressed to courts, public officials or an attorney . . .," 442 F.2d at 200, and pointed out that "the Constitution protects with special solicitude, a prisoner's access to the courts." *Id.* at 189. In *Morgan v. Montanye,* 516 F.2d 1367, 1372 (2d Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1476, 47 L.Ed.2d 743 (1976), the court declined to reconsider *Sostre's* holding in a case involving a single instance where incoming mail from an attorney was opened outside an inmate's presence. However, the later decision of *Wolfish v. Levi,* 573 F.2d 118 (2d Cir.1978), *rev'd in part on other grounds sub nom. Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), which upheld a lower court order prohibiting prison officials from opening or reading outgoing mail ("privileged" or otherwise) except in the inmate's presence and only upon a showing of good cause, implicitly limits *Sostre's* statement that prison officials may open and read all correspondence to and from an inmate. Writing for the court in *Wolfish,* then Chief Judge Kaufman—who also authored the *Sostre* opinion—upheld the district court decision on the ground that routine reading of correspondence was unwarranted in the absence of similar restrictions on telephone calls and visitation conversations equally likely to jeopardize prison security. The *Wolfish* court, moreover, expressly rejected the ruling of the Seventh Circuit in *Smith v. Shimp,* 562 F.2d 423 (1977), upholding a practice of reading outgoing nonprivileged mail without good cause. 573 F.2d at 131 n. 28. At a minimum, *Wolfish* can be read as limiting *Sostre's* sweep to those situations where the challenged interference substantially furthers a plausible security interest

in a rational manner. To the extent that appellees rely on only *Sostre's* holding, without advancing any rational justification for the restrictive practices challenged here, their reliance is misplaced.

Judgment reversed.

---

5. Davidson attempted to correspond with military authorities. He may have sought, for example, review of a military conviction or recon-

sideration of a dishonorable discharge, matters which might have been relevant to a resentencing petition or a parole hearing.