Robert W. PROUDFOOT

v.

C.O. I A. WILLIAMS, et al.

Civ. A. No. 91–7404.

United States District Court,
E.D. Pennsylvania.

Sept. 17, 1992.

---

Neil E. Jokelson, Neil E. Jokelson & Assoc., P.C., Philadelphia, Pa., for plaintiff.

Robert W. Proudfoot, pro se.

Denise A. Kuhn, Office of Attorney General, Philadelphia, Pa., for defendants.

## MEMORANDUM

PADOVA, District Judge.

Plaintiff, a prisoner, filed suit alleging that defendants, employees of the Pennsyl-

vania Department of Corrections, violated his rights, creating a cause of action under 42 U.S.C. § 1983, as well as under state law. After a non-jury trial held on August 17–19, 1992, I make the following findings of fact and conclusions of law.[1]

### Findings of Fact

1. Plaintiff, Robert W. Proudfoot, has been incarcerated at the State Correctional Institution at Graterford ("Graterford") since May of 1990.

2. Defendants Arthur Williams, Gerald Shemanski, Michael Witman, and Donald Thomas are employed at Graterford as Corrections Officers. All defendants are currently members of the "search team" at Graterford, which conducts searches of cells and other areas of the institution.

3. Proudfoot is 6′3″ tall. In October of 1991 he weighed approximately 260–270 pounds. Williams is 5′6″ tall; in October of 1991 he weighed approximately 190 pounds. Shemanski is 5′7″ tall; in October of 1991 he weighed approximately 140 pounds.

4. On October 16, 1991, Witman and Thomas were directed by Lieutenant Michael C. Barone to search plaintiff's cell, A–55, after Barone received information from an anonymous informant that drugs were being sold from the cell.

5. During the course of this search Witman and Thomas disarranged papers and property kept by plaintiff but did not "trash" or destroy the papers and files.

6. In plaintiff's cell on October 16, 1991 were oversized, sealed and stamped envelopes, addressed to the Honorable Norma L. Shapiro of this Court and to an attorney. The contents of the envelopes were letters and attachments concerning legal matters.

7. Witman picked up the letters, at which time plaintiff told Witman that the contents were privileged legal mail. Witman opened these sealed envelopes, removed the letters, and checked for contra-

band. During the course of this action, Witman scanned the letters, giving plaintiff the impression that the letters were being read by Witman.

8. Thomas did not open any sealed envelopes or examine those opened by Witman.

9. On October 24, 1991, at the direction of Barone, Witman and Thomas again searched Proudfoot's cell for drugs as reported by an anonymous informant.

10. During the course of this search, Witman and Thomas disarranged papers and property kept by plaintiff but did not "trash" or destroy the papers or files.

11. On October 29, 1991, Williams and Shemanski were directed to search Proudfoot's cell. Williams and Shemanski were unaware of the searches of Proudfoot's cell on October 16, 1991, and October 24, 1991.

12. The October 29, 1991 search of Proudfoot's cell was the third within eight days. Each search was investigative in nature to determine whether contraband was in the cell; however, no drugs or money were found on any of these occasions.

13. When Shemanski and Williams went to the cell on October 29, 1991 to conduct the search, the cell was double-locked, meaning that only corrections officers could enter the cell. Proudfoot and his cellmate, Vincent Fischetti, had been double locked in their cell as a disciplinary sanction.

14. After Shemanski and Williams removed the double-lock, they were unable to open the door because of an unauthorized "jam" placed in the door by Proudfoot and Fischetti. The corrections officers ordered the inmates to remove the jam. Fischetti moved from the bunk to the door but did not immediately remove the jam. Fischetti seemed to be waiting for clearance from Proudfoot before removing the jam.

15. Inmates at Graterford often place such jams in the door as a protection

---

**1.** Plaintiff filed three lawsuits in this Court. Civil Actions 91–7721 and 91–7723 have been consolidated with Civil Action 91–7404. Although the complaints were filed *pro se,* counsel subsequently was appointed to represent plain-

tiff. Appointed counsel did not amend the complaints. Summary judgment was granted in favor of some defendants and on various claims, and other defendants and claims were dismissed during the course of the trial.

against violence and theft from other inmates. When the cell is double-locked, however, other inmates cannot enter.

16. When the door was opened, Shemanski and Williams ordered the inmates to strip for a search of their persons. Proudfoot removed his clothes but became belligerent.

17. Proudfoot was ordered to submit to a visual inspection of his buttocks. He did not cooperate with this order and demanded that such an inspection be conducted by a medical officer. Thereafter, Proudfoot was ordered to redress to be taken to the day captain's office for a full anal cavity search.

18. At this point, Proudfoot, believing mistakenly that the search was motivated by harassment, became aggressive and resistent and a struggle ensued during which Shemanski and Williams attempted to handcuff Proudfoot. During this struggle Proudfoot sustained injuries to his left eye and right temple. Neither Proudfoot, Shemanski, nor Williams purposefully punched or struck.

19. Proudfoot did not attempt to dispose of contraband by flushing it down the toilet.

20. After the altercation, Proudfoot was escorted to the day captain's office by the defendants and then to sick call by Lieutenant Charles Croll. Defendants did not push Proudfoot against the walls of the cellblock during this transfer.

### Discussion

Plaintiff's suit alleges that defendants, employees of the Pennsylvania Department of Corrections, violated his federal constitutional rights, creating a cause of action under 42 U.S.C. § 1983,[2] as well as violating his rights under state law. As in any civil case, plaintiff had the burden of proving his case by a preponderance of the evidence.

Three separate incidents form the basis of the remaining claims in this suit. After hearing the evidence, I am persuaded that each of the three searches of plaintiffs' cell was conducted for a legitimate purpose and that they were not conducted to harass or intimidate plaintiff. However, I also recognize plaintiff's frustration and anger over having his cell searched three times in eight days. Although I find that each search was conducted for a legitimate purpose, plaintiff may have felt he was being harassed because of his legal activities.

### A. Search of October 16, 1991

 The first search, on October 16, 1991, was conducted by defendants Witman and Thomas. Although I find that they did disrupt the order of plaintiff's legal materials, I find that their conduct was not unreasonable in the context of a cell search and that no liability attaches from this part of the search. A prisoner has no reasonable expectation of privacy in his cell that would entitle him to Fourth Amendment[3] protection from unreasonable searches and seizures. *See Hudson v. Palmer*, 468 U.S. 517, 527–28, 104 S.Ct. 3194, 3200–01, 82 L.Ed.2d 393 (1984). Searches can only rise to an Eighth Amendment violation when they are conducted for "calculated harassment." *See id.* at 530, 104 S.Ct. at 3202. As I have found each of the searches was properly motivated, there can be no Eighth Amendment violation in that regard.

 I also find, however, that Witman did open sealed, oversized envelopes that were addressed to a federal judge and an attorney and appeared to scan the letters. There was absolutely no evidence that Thomas was involved in any way with the search of the legal mail.

The status of prisoners' legal mail is an evolving one, and the case law in this Cir-

---

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured...." 42 U.S.C. § 1983.

3. I refer to plaintiff's Fourth Amendment rights, although, of course, these rights are incorporated through the Fourteenth Amendment's due process clause to apply to the states.

**1052**

cuit on the issue of reading outgoing legal mail in the prisoner's presence is not settled.[4]

The Third Circuit has not ruled directly on the issue of whether prison officials may read inmate legal mail. The Courts of Appeal in other circuits have addressed the issue and have found that prisoners have a constitutionally protected right actionable under section 1983 not to have legal mail read by prison officials, drawing from *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).[5] *See, e.g., Lemon v. Dugger*, 931 F.2d 1465 (11th Cir. 1991); *Davidson v. Scully*, 694 F.2d 50 (2d Cir.1982); *Jensen v. Klecker*, 648 F.2d 1179 (8th Cir.1981); *Ramos v. Lamm*, 639 F.2d 559 (10th Cir.1980); *Smith v. Shimp*, 562 F.2d 423 (7th Cir.1977); *Taylor v. Sterrett*, 532 F.2d 462 (5th Cir.1976).

The Third Circuit mentioned some of these cases in passing, but with seeming approval, in the context of a case concerning an attorney's access to a prison. *See Sturm v. Clark*, 835 F.2d 1009, 1015 n. 13 (3rd Cir.1987) ("The burden remains upon the prison officials to assert legitimate reasons for interfering with a prisoner's incoming mail. *Procunier v. Martinez*, 416 U.S. 396, at 413, 94 S.Ct. 1800, at 1811, 40

L.Ed.2d 224; *Parrish v. Johnson*, 800 F.2d 600 (6th Cir.1986). Several courts have held that mail relating to a prisoner's legal matters cannot be read, and may only be opened in the prisoner's presence. *Taylor v. Sterrett*, 532 F.2d 462, 477–78 (5th Cir. 1976); *Bach v. Illinois*, 504 F.2d 1100, 1102 (7th Cir.1974) (per curiam).") The court in *Bryan v. Werner*, 516 F.2d 233 (3d Cir. 1975), was concerned with legal materials being sent through the prison law clinic, and the effect of materials sent with the imprimatur of the clinic, presenting an interest of the prison that may outweigh the effect of reading the mail, and is distinguished on that basis.

■ The right of a prisoner to send and receive legal mail is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts. When that legal mail is read by prison employees, the risk is of a "chill," rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees. The Bureau of Corrections apparently recognizes this risk, which is why the regulations contain specific (if not totally clear) provisions

4. A Pennsylvania Bureau of Correction's Directive increases the confusion. Administrative Directive 803, "Inmate Mail Privileges," provides in relevant part:

III. PRIVILEGED CORRESPONDENCE

A. The following correspondents shall be considered privileged. All correspondence must be clearly marked with the name and title of the correspondent for it to be considered privileged.

1. Elected or appointed federal, state or local officials.

2. Attorneys

B. Mail to these persons will not be opened, read, censored, or reproduced except as provided for in Section IV. Privileged correspondence must be clearly marked on the envelope with the name and title of the privileged correspondent. Only privileged correspondence may be so marked. Mail from these persons will be delivered to the housing unit officer, opened by the officer in the presence of the addressee and checked for contraband. Mail from these persons will not be read, censored or reproduced except as provided for in Section IV.

IV. SECURITY

A. The institution may read non-privileged mail upon the approval of the Superintendent only when there is reason to believe that security may be impaired or that this directive is being abused.

B. The institution may read privileged mail, as described in Section III, only upon the written order of the Superintendent with the written approval of the Commissioner of Correction when there is reason to believe that there is a threat to security, criminal activity, or the directive has been violated. The inmate will be given the opportunity to be present when his privileged mail is read except in circumstances where the inmate's presence would create a serious security risk or interfere with an on-going investigation. Defendant's Exhibit 1.

5. In *Wolff*, the Supreme Court upheld prison restrictions on the receipt of mail, holding that "the ability to open the mail in the presence of inmates ... could in no way constitute censorship, since the mail would not be read. Neither could it chill such communications, since the inmate's presence insures that prison officials will not read the mail." *Wolff*, 418 U.S. at 577, 94 S.Ct. at 2985.

for dealing with legal mail.[6] Even if plaintiff cannot show that defendant Witman actually read the letter, plaintiff perceived the letter as read as a result of Witman's conduct and that was enough to raise the possibility of a chill. Had Witman complied with what Administrative Directive 803 provides when read in the manner most protective of the prisoner's rights—that the letters be opened when there is reason to believe that there is a threat to security, and read only by order of a higher official—the risk of a chill would have been considerably reduced and balanced by the prison's legitimate penological interest in discovering contraband. *See Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).[7] I consequently find that Witman violated plaintiff's constitutional right of access to the courts and therefore plaintiff has proved a cause of action under section 1983. However, I also find that Witman is entitled to qualified immunity in connection with this incident.

■■■ Qualified immunity insulates state actors from liability if they could have reasonably believed that the action was constitutionally valid in light of the legal rules that were "clearly established" at the time the action was taken. *See Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Witman did not violate a clearly defined legal duty. The question of reading a prisoner's outgoing legal mail remains unsettled—neither the Supreme Court nor the Third Circuit has addressed the matter squarely. Furthermore, the line between an impermissible reading (or apparent reading) of outgoing legal mail and a permissible checking of that mail for contraband may blur easily. Witman did not act unreasonably, especially as the envelopes were oversized and

contained enclosures, making them of a type more likely to contain contraband. Therefore, Witman is entitled to this defense.[8]

**B. Search of October 24, 1991**

Like the search of October 16, 1991, the search conducted by Witman and Thomas on October 24, 1991 was conducted pursuant to a legitimate purpose and was not carried out in a purposefully destructive manner. The actions of the corrections officers in conducting this search were within the bounds of reasonableness. Therefore, no liability arises from this search.

**C. Search of October 29, 1991**

■■■ The events of October 29, 1991 present the most difficult issues for resolution. The accounts of that night as given by the witnesses at trial are irreconcilable with one another. To recover under section 1983 for violation of his Eighth Amendment rights, plaintiff must prove that defendants Shemanski and Williams used excessive physical force constituting " 'the unnecessary and wanton infliction of pain.' " *Hudson v. McMillian*, — U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986)). When the prison officers use force to keep order, they "must balance the need 'to maintain or restore discipline' through force against the risk of injury to inmates." *Id.* — U.S. at ——, 112 S.Ct. at 999 (quoting *Whitley*, 475 U.S. at 321–22, 106 S.Ct. at 1085)). In sum, the "core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to

6. The policy of the prison on legal mail has not been challenged in this suit, the Bureau of Corrections is not a defendant, and nothing in this opinion should be construed as directed to it. However, this Court expresses the hope that the Bureau will clarify its regulations on this issue, which would benefit both the prison employees and the inmates.

7. I do not find that a violation of the regulations constitutes a constitutional violation, but merely note that the regulations, especially if clarified,

provide guidance that would be helpful to all parties.

8. Even if Witman were not entitled to qualified immunity, damages would not be appropriate. Plaintiff provided no proof that his rights were actually chilled or that he suffered any harm, and therefore no damages would be awarded. *See Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir.1982).

cause harm." *Id.* I find here that the evidence does not support a finding of unnecessary and wanton infliction of pain.

When defendants Shemanski and Williams entered Cell A–55 on the evening of October 29, 1991, they did not do so with the intent to provoke, harass, or injure plaintiff, but to carry out the search ordered by their superior. The corrections officers were unaware of the previous two searches of plaintiff's cell, and although plaintiff understandably may have perceived the search as harassment, it was not intended that way by defendants. Therefore, plaintiff's hostility to this search could not have been anticipated by the defendants, and they acted as they thought necessary in the situation. The escalation of tension into physical struggle was not intended by either plaintiff or defendants, and after weighing the evidence presented, plaintiff has not proved a claim under section 1983 for a violation of his Eighth Amendment rights.

 Although, as discussed, the Fourth Amendment does not provide the basis for a section 1983 action for prisoners in the context of searches of their cells, it may do so in the context of searches of the person. In *Bell v. Wolfish*, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), the Supreme Court held that determining the reasonableness of searches "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." I find that the search was reasonable; defendants Shemanski and Williams had been sent to search for contraband, and courts should, to the extent consistent with the Constitution, defer to the judgment of prison officials in evaluating activities related to safety and control of the prison. *See, e.g., Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). I do not find that defendants acted in an unreasonable manner toward plaintiff in connection with the stripsearch.

 Plaintiff also alleges claims under Pennsylvania common law for assault, intentional infliction of emotional distress, and outrageous conduct. Under Pennsylvania law, an assault occurs when one acts with the unprivileged intent to put another in reasonable and immediate apprehension of a harmful or offensive conduct and which does cause such apprehension. *See Cucinotti v. Ortmann*, 399 Pa. 26, 159 A.2d 216 (1960). Intentional infliction of emotional distress and outrageous conduct require intent that goes beyond all acceptable bounds. *See, e.g.,* Restatement (Second) of Torts § 46 (1965) (adopted in Pennsylvania in, e.g., *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970)). As already stated, I find that defendants Shemanski and Williams acted without the requisite intent to harm plaintiff, and therefore I find for defendants and against plaintiff on these claims.[9]

### Conclusions of Law

1. The Fourth Amendment to the United States Constitution does not protect prisoners from unreasonable searches of their cells.

2. A search of a prisoner's cell may violate the Eighth Amendment to the United States Constitution if it is conducted for the purpose of "calculated harassment."

3. The searches of plaintiff's cell on October 16, 1991, October 24, 1991, and October 29, 1991 were not conducted for the purpose of "calculated harassment."

4. Plaintiff has not proved a violation of his rights in connection with the searches of his cell and judgment will be entered in favor of the defendants on the Fourth and Eighth Amendment claims based on such searches.

5. Under the First and Sixth Amendments to the Constitution, prison officials may not read outgoing legal mail of prisoners, or create the impression that such mail has been read so that the prisoner is chilled in exercising his rights.

---

**9.** Neil Jokelson, Esq. was appointed by this Court to represent the plaintiff pro bono. Mr. Jokelson has skillfully represented the plaintiff in a manner consistent with the highest traditions of the bar. I acknowledge his professional and public service in that regard.

6. Defendant Witman violated plaintiff's rights by giving the appearance of reading plaintiff's outgoing legal mail.

7. Defendant Witman could have acted in the reasonable belief that his conduct was not unconstitutional.

8. Defendant Witman did not violate a "clearly established" legal principle by the manner is which he searched the mail.

9. Because defendant Witman did not act with an improper motive and because he did not violate clearly established legal principles, he is entitled to a defense of qualified immunity and judgment will be entered in his favor.

10. The use of excessive physical force constituting "the unnecessary and wanton infliction of pain" violates the Eighth Amendment to the United States Constitution and provides a cause of action under 42 U.S.C. § 1983.

11. Defendants Shemanski and Williams did not use excessive physical force constituting the unnecessary and wanton infliction of pain.

12. Because plaintiff has not met his burden of proving a violation of his Eighth Amendment rights, judgment will be entered in favor of defendants Shemanski and Williams in this matter.

13. Under Pennsylvania law, plaintiff must prove that defendants acted with intent to cause apprehension of physical contact and created such apprehension to sustain an action for assault.

14. Plaintiff has not met his burden of proof as to the intent of defendants Shemanski and Williams, and judgment will be entered in their favor on the claim of assault and the claims of outrageous conduct and intentional infliction of emotional distress.

15. Judgment on all claims will be entered in favor of defendants and against plaintiff.