Steven JORDAN, Plaintiff,

v.

NEW JERSEY DEPARTMENT OF CORRECTIONS, William H. Fauver, Donald E. Lewis, George Schley, Gregory Riggs, David Kershaw, William Varell, Anthony Muns, Linda Lingo, Donald Williams, Jeffery Fowler, Ricky Santos, Blaine E. Dawson, Andy Jiminez, Defendants.

Civ. No. 94–2062.

United States District Court, D. New Jersey.

March 31, 1995.

Steven Jordan, Rahway, NJ, plaintiff pro se.

Deborah T. Poritz, Atty. Gen., State of N.J. by Dianne M. Moratti, Deputy Atty. Gen., Trenton, NJ, for defendants.

## OPINION

RODRIGUEZ, District Judge:

This matter is before the court on the motion of defendants New Jersey Department of Corrections ("DOC") and William Fauver to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Also before the court is the motion of defendants DOC, Fauver, Donald Lewis, Gregory Riggs, David Kershaw, William Varell, Anthony Muns, Linda Lingo,

Jeffrey Fowler, Ricky Santos, Blaine Dawson and Andy Jiminez to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted and/or for summary judgment. For the following reasons, the court will grant defendants' motions to dismiss and/or for summary judgment.

## I. BACKGROUND

Plaintiff *pro se* Steven Jordan is a New Jersey state prisoner currently incarcerated at East Jersey State Prison in Rahway, New Jersey. From July 12, 1993 until sometime in September 1994, plaintiff was incarcerated at Riverfront State Prison in Camden, New Jersey. On May 12, 1994, plaintiff filed a complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials at Riverfront were violating plaintiff's constitutional rights in a variety of ways.

Specifically, plaintiff's complaint contains five distinct allegations of constitutional violations by prison officials at Riverfront. First, plaintiff claims that his Eighth Amendment right to freedom from cruel and unusual punishments was violated by defendants Riggs, Kershaw, Dawson, Lewis, Schley, Williams, Varell, Muns, Lingo, Fowler, Santos and Jiminez when plaintiff was housed with a series of cellmates who were cigarette smokers.[1] Second, plaintiff alleges that those defendants were deliberately indifferent to his serious medical needs which resulted from his exposure to excessive second-hand smoke, also in violation of the Eighth Amendment.[2] Third, plaintiff claims that his First Amendment right of access to the courts was violated by defendants Williams and Fowler, who allegedly read plaintiff's legal mail on separate occasions. Fourth, plaintiff claims that his First Amendment right of access to the courts was violated when his legal mail was allegedly mishandled by personnel in the prison business office. Finally, plaintiff claims that his Eighth Amendment right to freedom from cruel and unusual punishment was violated when he was housed in a unit with an allegedly high

noise level. Plaintiff has brought these claims against all named defendants in both their official and individual capacities. Plaintiff seeks compensatory, punitive and exemplary damages in the amount of $1 million dollars, plus injunctive relief.

On July 28, 1994, defendants DOC and Fauver filed the first motion to dismiss plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted. On August 15, 1994, defendants DOC, Fauver and the other defendants filed the second motion to dismiss plaintiff's complaint, pursuant to Fed. R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted, and/or for summary judgment, pursuant to Fed. R.Civ.P. 56.

## II. DISCUSSION

### A. Standard on Motion to Dismiss

█ A district court considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) may not grant the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The court must accept as true the facts pleaded in the complaint and any and all reasonable inferences that may be drawn from those facts. *Unger v. National Residents Matching Program,* 928 F.2d 1392, 1400 (3d Cir.1991); *Glenside West Corp. v. Exxon Co. U.S.A.,* 761 F.Supp. 1100, 1107 (D.N.J.1991); *Gutman v. Howard Sav. Bank,* 748 F.Supp. 254, 260 (D.N.J.1990).

█ To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States committed by a person or persons "acting under color of

---

**1.** Plaintiff's allegations against Officers Williams and Schley are not addressed in the motions presently before the court because neither Officer Williams nor Officer Schley were served with a summons and complaint.

**2.** Since defendants did not address this allegation in their motion to dismiss, this claim survives defendants' motion to dismiss.

State law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). The Third Circuit requires "that a civil rights complaint under § 1983 must set forth with factual specificity the conduct of the plaintiffs alleged to have caused harm to the plaintiff." *Darr v. Wolfe*, 767 F.2d 79, 80 (3d Cir.1985). However, *pro se* submissions "must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976), *reh'g denied*, 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977) (quoting *Conley v. Gibson*, 355 U.S. at 45–46, 78 S.Ct. at 101–102). A court must assume a *pro se* plaintiff's factual allegations are true and construe his claim liberally. *See Neitzke v. Williams*, 490 U.S. 319, 330 n. 9, 109 S.Ct. 1827, 1834 n. 9, 104 L.Ed.2d 338 (1989); *Roman v. Jeffes*, 904 F.2d 192, 197 (3d Cir. 1990).

### B. Standard on Motion for Summary Judgment

■ The entry of summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If a disputed fact exists that, under the controlling law, might affect the outcome of the suit, the entry of summary judgment is precluded. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. Once the moving party has met its opening burden, the non-moving party must present affirmative evidence that a material fact is genuine. *Id.* at 324, 106 S.Ct. at 2553. An issue is "genuine" if it is supported by evidence such that a reasonable jury might return a verdict in the non-moving party's favor. *Equimark Comm. Fin. Co. v. C.I.T. Fin. Corp.*, 812 F.2d 141, 144 (3d Cir.1987).

■ When a motion for summary judgment is made and properly supported, the non-moving party may not rest upon the mere allegations or denials of its pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Rather, the non-moving party must set forth, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* "When the record is such that it would not support a rational finding that an essential element of the nonmoving party's claim or defense exists, summary judgment *must* be entered for the moving party." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 (3d Cir.1990).

### C. Plaintiff's Claims Against Defendant DOC

■ Plaintiff has named the DOC as a defendant. The DOC has moved to dismiss plaintiff's claims against it.

■ It is well settled that, absent a clear waiver by a state of its sovereign immunity under the Eleventh Amendment or a congressional abrogation of that immunity, a federal court lacks jurisdiction to hear claims brought by an individual against a state. *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). It is also well settled that Congress did not intend to abrogate the sovereign immunity of the states under the Eleventh Amendment when it enacted 42 U.S.C. § 1983. *Edelman v. Jordan*, 415 U.S. 651, 676–77, 94 S.Ct. 1347, 1362–63, 39 L.Ed.2d 662 (1974). Finally, it is well settled that the State of New Jersey's sovereign immunity under the Eleventh Amendment extends to the DOC. *Snyder v. Baumecker*, 708 F.Supp. 1451, 1455–56 (D.N.J.1989). Thus, a § 1983 action against the DOC cannot be maintained in a federal court absent a clear waiver of sovereign immunity.

The DOC had not waived its sovereign immunity in this case. Accordingly, the court will grant defendants' motion to dismiss plaintiff's claim against the DOC for failure to state a claim upon which relief can be granted.

*D. Plaintiff's Official Capacity Claims*

 Plaintiff has brought his claims against the remaining named defendants in both their official and individual capacities. Defendants have moved to dismiss plaintiff's claims against them.

In *Will v. Michigan Department of State Police,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 2311–2312, 105 L.Ed.2d 45 (1989), the United States Supreme Court held that a § 1983 action seeking damages against a state official in his official capacity cannot be maintained because the real party in interest in such an action is the state, and a state is not a "person" within the meaning of § 1983. Thus, to the extent the present action seeks damages against the named defendants in their official capacities, it cannot proceed. Accordingly, the court will grant defendants' motion to dismiss those portions of plaintiff's complaint that seek damages against defendants in their official capacities for failure to state a claim upon which relief can be granted.

*E. Plaintiff's Cruel and Unusual Punishments Claim*

 Plaintiff claims that his Eighth Amendment right to freedom from cruel and unusual punishments was violated when he was forced to share a cell with a series of inmates who were cigarette smokers. Defendants acknowledge that the Eighth Amendment is implicated by exposure to excessive levels of second-hand smoke and that plaintiff was housed with a series of smokers. Defendants, however, claim they are entitled to qualified immunity on this claim because the plaintiff's Eighth Amendment right was not "clearly established" at the time of the challenged conduct. Defendants also argue that plaintiff's claim is meritless in light of the new smoking policy adopted at Riverfront effective May 15, 1994.

In *Helling v. McKinney,* — U.S. —, —, 113 S.Ct. 2475, 2481, 125 L.Ed.2d 22 (1993), the Supreme Court held that prison officials may violate the Eighth Amendment's prohibition against cruel and unusual punishments by exposing inmates to an excessive level of environmental tobacco smoke ("ETS"). To obtain relief, a prisoner must prove not only that the level of ETS to which he is exposed is unreasonably high, but also that prison officials have shown "deliberate indifference" to the health risks associated with second-hand smoke. *Id.* at — – —, 113 S.Ct. at 2481–82. The Court observed that "the adoption of [a] smoking policy ... will bear heavily on the inquiry into deliberate indifference." *Id.* at —, 113 S.Ct. at 2482.

In order to be entitled to qualified immunity, defendants must show that "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiff's complaint in this case was filed nearly eleven months after the *Helling* decision was announced. Thus, plaintiff's Eighth Amendment right to be free from excessive second-hand smoke had been "clearly established" for nearly eleven months before plaintiff filed his complaint. Defendants are not entitled to qualified immunity under these circumstances.

However, the adoption of the new smoking policy at Riverfront within eleven months of the *Helling* decision indicates that defendants were not "deliberately indifferent" to the health risks associated with excessive exposure to second-hand smoke. The policy specifically declares that where more than one inmate is assigned to a cell, that cell will be designated a non-smoking area if one of the inmates is a non-smoker. The court finds that the delay between the *Helling* decision and the adoption of the new smoking policy was not unreasonable.

Plaintiff's argument that the policy was not enforced until September 1, 1994 does not create a genuine issue of material fact. The memorandum announcing the new smoking policy indicates that violations would result in warnings until September 1, 1994, when formal disciplinary procedures would become applicable. This provision reflects a reasonable administrative accommodation by the prison officials who promulgated the new policy, not deliberate indifference. Accordingly, the court will grant defendants' motion for summary judgment on this claim.

*F. Plaintiff's Claim That His Legal Mail Was Censored*

 Plaintiff claims that his First Amendment right of access to the courts was violated when defendant Fowler read his legal mail during a search of plaintiff's cell for contraband. Defendants have asserted that a search of plaintiff's legal mail for contraband is permissible, but have not responded to the specific allegation that defendant Fowler read plaintiff's legal mail while searching for contraband.

The U.S. Court of Appeals for the Fifth Circuit recently observed that "the precise contours of a prisoner's right of access to the courts remain somewhat obscure." *Brewer v. Wilkinson,* 3 F.3d 816, 821 (5th Cir.1993). Similarly, the Fifth Circuit went on to note, "the precise contours of a prisoner's right to free speech are also obscure." *Id.* Relying on *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), however, a number of Courts of Appeals, including the Fifth Circuit, have concluded that prisoners have a constitutionally protected right actionable under § 1983 not to have their legal mail read by prison officials. *See, e.g., Lemon v. Dugger,* 931 F.2d 1465 (11th Cir.1991); *Davidson v. Scully,* 694 F.2d 50 (2d Cir. 1982); *Jensen v. Klecker,* 648 F.2d 1179 (8th Cir.1981); *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980); *Smith v. Shimp,* 562 F.2d 423 (7th Cir.1977); *Taylor v. Sterrett,* 532 F.2d 462 (5th Cir.1976).

In *Proudfoot v. Williams,* 803 F.Supp. 1048 (E.D.Pa.1992), a district court in this circuit held that prisoners have a constitutional right not to have their legal mail read by prison officials despite the fact that the Third Circuit has not squarely addressed the issue. Relying on the cases cited above, the district court concluded that a prison guard had violated a prisoner's constitutional right of access to the courts when the guard scanned the prisoner's legal mail during a search of the prisoner's cell for contraband. *Id.* at 1053. The court reasoned that permitting prison employees to read prisoners' legal mail could cause a chilling effect that might render prisoners "unwilling or unable to raise substantial legal issues critical of the prison or prison employees." *Id.* at 1052. The court also determined, however, that the prison guard was entitled to qualified immunity because the prisoner's legal right was not "clearly established" at the time the action was taken. *Id.* at 1053 (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

 This district court agrees with the *Proudfoot* court that prisoners have a constitutional right not to have their legal mail read by prison officials. This court also agrees, however, that defendant Fowler is entitled to qualified immunity, even though regulations governing the inspection of prisoner legal mail in New Jersey's state prisons clearly indicate that prison officials may not read inmate legal mail during a search for contraband. *See* N.J.A.C. 10A:18–3.4(c) (1994). "Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984); *Brown v. Grabowski,* 922 F.2d 1097, 1113 (3d Cir.1990) (holding a state official's violation of a New Jersey statute "irrelevant" to the determination whether defendants violated a "clearly established" constitutional right of plaintiff's). Since, at the time of the challenged conduct, neither the U.S. Supreme Court nor the Third Circuit nor any district court in the District of New Jersey had held that a prisoner has a constitutional right not to have his legal mail read by prison officials, that right was not sufficiently "clearly established" to strip defendant Fowler of qualified immunity. Accordingly, the court will grant defendants' motion for summary judgment on this claim.

*G. Plaintiff's Claim That His Legal Mail Was Mishandled*

 Plaintiff alleges that on two separate occasions an Officer Eckert, who allegedly was responsible to collect and deliver prisoner legal mail to the Riverfront business office for postage and mailing, failed to deliver plaintiff's legal mail to the business office even though plaintiff was charged for postage. Plaintiff maintains that Officer Eckert's failure to properly handle plaintiff's legal mail violated plaintiff's constitutional right of

access to the courts. Plaintiff's complaint is defective, however, because plaintiff failed to name Officer Eckert as a defendant. For this reason, defendants have not addressed this claim in their motion to dismiss.

A district court should grant a party leave to amend a pleading "when justice so requires." Fed.R.Civ.P. 15(a). Since the failure to name Officer Eckert as a defendant appears to be an inadvertent error by a *pro se* plaintiff, this seems to be a situation where justice requires leave to amend. The U.S. Supreme Court has made clear that leave to amend should only be denied for reasons such as undue delay, bad faith, dilatory motive, repeated failures to correct deficiencies, undue prejudice to the defendant, or futility. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *see also Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J. 1990). The court finds no evidence of undue delay, bad faith, dilatoriness, repeated failure to correct defects, or undue prejudice to the defendants, leaving futility as the only appropriate grounds for denying leave to amend in this case.

■ An amendment is futile when the amended complaint would not survive a motion to dismiss. *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). At this juncture, the court cannot conclude that plaintiff's claim against Officer Eckert would be susceptible to a motion to dismiss. Accordingly, the court will grant plaintiff leave to amend his complaint within thirty days solely to name Officer Eckert as a defendant.

### H. Plaintiff's Excessive Noise Claim

■ Plaintiff claims that the noise levels in the units at Riverfront where he was housed were excessive and that defendants failed to take action to reduce the noise level, thereby violating his Eighth Amendment right to be free from cruel and unusual punishments. Defendants have moved to dismiss on the grounds that plaintiff's allegations are not sufficiently specific.

■ The U.S. Supreme Court has observed that the Eighth Amendment's prohibition of cruel and unusual punishments forbids not only torture and other physically barbarous punishments, but also "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (citations omitted). Thus, a court confronted with a prisoner's Eighth Amendment challenge to the conditions of his confinement should measure the challenged conditions against " 'the evolving standards of decency that mark the progress of a maturing society.' " *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958).

However, "[n]ot every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." *Id.* "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Id.*

The court is aware of several cases where excessive noise was one of a number of conditions of confinement that, taken as a whole, were held to have violated the Eighth Amendment, including *Inmates of Occoquan v. Barry,* 650 F.Supp. 619 (D.D.C.1986), and *Palmigiano v. Garrahy,* 443 F.Supp. 956 (D.R.I.1977), cited by plaintiff in his reply memorandum. In these cases, it was the overall deplorable living conditions in the prisons that failed to comport with contemporary standards of decency and revealed the "obduracy and wantonness" of the prison officials. The court is unaware, however, of any case where a high noise level alone was held to have violated the Eighth Amendment.

Moreover, plaintiff does not allege that the high noise level at Riverfront was caused by defendants in any way. In fact, plaintiff observes that the loud conditions at Riverfront were not surprising, since a large num-

ber of people confined in a small space usually will make a lot of noise. This observation, which applies to an apartment building as readily as it applies to a prison, undermines plaintiff's claim by demonstrating that the noise level at Riverfront in and of itself does not violate contemporary standards of decency and does not reflect "obduracy or wantonness" on the part of defendants. Accordingly, the court will grant defendants' motion to dismiss this claim for failure to state a claim upon which relief can be granted.

An appropriate order will be entered.

### ORDER

For the reasons set forth in this court's opinion filed even date,

IT IS ORDERED on this 31st day of March, 1995 that the motion of defendants New Jersey Department of Corrections and William Fauver to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted is *GRANTED* except as to plaintiff's claim that defendants were deliberately indifferent to plaintiff's serious medical needs as a result of plaintiff's exposure to second-hand smoke.

IT IS FURTHER ORDERED that the motion of defendants DOC, Fauver, Donald Lewis, Gregory Riggs, David Kershaw, William Varell, Anthony Muns, Linda Lingo, Jeffrey Fowler, Ricky Santos, Blaine Dawson and Andy Jiminez to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted and/or for summary judgment is *GRANTED* except as to plaintiff's claim that defendants were deliberately indifferent to plaintiff's serious medical needs as a result of plaintiff's exposure to second-hand smoke.

IT IS FURTHER ORDERED that plaintiff shall have thirty days from receipt of this Order to amend his complaint solely to name Officer Eckert as a defendant.

IT IS FURTHER ORDERED that plaintiff shall have thirty days from the receipt of this Order to demonstrate to the court that good cause exists for his failure to serve defendants Schley and Williams within 120 days after filing his complaint, as required by Fed.R.Civ.P. 4(m). Plaintiff's failure to demonstrate good cause will result in the dismissal of the complaint as against defendants Schley and Williams on the court's own motion, pursuant to Fed.R.Civ.P. 4(m).