Myers v. Charron                    CV-97-537-M    06/30/98
                  UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Julian Lee Myers,
      Plaintiff

      v.                                Civil No. 97-537-M

Gene P. Charron, Superintendent,
and Rockingham County
Department of Corrections,
      Defendants


                         **O R D E R**


      Defendant's motion for summary judgment is granted.

      Plaintiff seeks monetary damages and injunctive relief (42

U.S.C. § 1983) based on his claim that while incarcerated in the

Rockingham County Jail (as a sentenced inmate) he was exposed to

excessive levels of environmental tobacco smoke ("ETS"), in

violation of his Eighth Amendment right to be free from cruel and

unusual punishment.  Plaintiff was held in the Rockingham County

Jail from September, 1997, to May, 1998.  Defendant, the jail's

superintendent, moves for summary judgment on three grounds:

1) plaintiff was not involuntarily exposed to excessive amounts

of ETS; 2) defendant was not "deliberately indifferent" to the

health risks posed to plaintiff by excessive levels of ETS, and

3) defendant is entitled to qualified immunity because he has

shown that his conduct did not violate plaintiff's clearly

established statutory or constitutional rights of which a

reasonable person should have been aware.

Only brief discussion is warranted in this case, as plaintiff has not shown that some genuine dispute exists as to a material fact warranting a trial.[1]

In <u>Hellig v. McKinney</u>, 509 U.S. 25 (1993), the Supreme Court held that exposing prisoners to excessive levels of environmental tobacco smoke could, under some circumstances, amount to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.  In this case, plaintiff complains of exposure to ETS while in the Rockingham County Jail in 1997, and by 1997, four years after <u>Hellig</u> was decided, plaintiff's Eighth Amendment right to at least be free from excessive second-hand smoke posing an unreasonable risk to his health had been "clearly established."  So, defendant is probably not entitled to qualified immunity because he cannot show that his conduct "did not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).[2]

Plaintiff's complaint fails in any event.  To prevail plaintiff would have to show that the amount of ETS to which he

---

[1]  Defendant has demonstrated the absence of a genuine issue of material fact for trial, and plaintiff has not set forth any specific "factual disagreement sufficient to deflect <u>brevis</u> disposition."  <u>Mesnick v. General Electric Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991); <u>see</u> <u>also</u> Fed. R. Civ. P. 56(e).

[2]  However, a good argument can be made that because <u>Hellig</u> did not hold that <u>any</u> exposure to ETS constitutes cruel and unusual punishment, and because the jail had a policy that sought to minimize ETS exposure, the defendant's conduct in implementing the policy would not be recognized by a reasonable person as violating plaintiff's clearly established constitutional rights.

2

was exposed was unreasonably high, and that the defendant superintendent was "deliberately indifferent" to the health risk to plaintiff posed by that excessive ETS.  Hellig, 509 U.S. at 35-36.  With respect to the objective element of his Eighth Amendment cause of action — that plaintiff was exposed to unreasonably high levels of ETS — the defendant offers the applicable jail regulations providing that smoking is allowed only in an inmate's cell and while outdoors in the exercise yard (not in common areas).  Defendant also asserts, in an affidavit, that plaintiff was designated as a non-smoker and was only assigned to cells and cellmates that were similarly designated pursuant to jail policy.  (Plaintiff apparently requested that he be allowed to share a cell at one point with inmate John Peredina, who, although classified as a non-smoker, occasionally was known to smoke a cigar in the cell when plaintiff was not present.)  Finally, defendant asserts that the air in each cell was exchanged completely within minutes by an air filtration system.

Although he argues about minor details, plaintiff offers no contrary evidence of a material nature.  The undisputed facts of record do not support plaintiff's claim that he was exposed to unreasonably high levels of ETS.

Putting that issue aside, however, it is apparent that plaintiff has neither pled facts nor offered evidence sufficient to establish the subjective element of an Eighth Amendment claim — that defendant was deliberately indifferent to unreasonable

3

health risks posed by plaintiff's exposure to unreasonably high levels of ETS. The uncontradicted affidavit of Superintendent Charron establishes that a smoking policy was in effect at the jail. The policy was obviously designed to minimize inmate exposure to second hand smoke. Nonsmokers were paired together in nonsmoking cells, and smoking was prohibited in common areas. Smoking was only permitted in one's cell (where air was completely exchanged every few minutes).

Whatever one's view of the risks associated with exposure to any amount of second hand smoke, and whatever might be generally thought about the propriety of eliminating all smoking in public facilities, particularly in confined spaces, still, the policy adopted and enforced by defendant shows that he was not "deliberately indifferent"[3] to the health risks associated with excessive exposure to second-hand smoke, and in fact acted in a manner designed to minimize those risks in a reasonable fashion.[4]

_____

[3] As the Supreme Court noted in Hellig, 509 U.S. at 36-37, adoption and implementation of a reasonable smoking policy by corrections officials should bear heavily on the inquiry into deliberate indifference, making it very difficult to demonstrate that authorities are ignoring the possible dangers posed by exposure to ETS.

[4] It is not entirely clear whether Superintendent Charron is sued in his official or individual capacity. Plaintiff says he "also" sued the county department of corrections, suggesting he might have intended to sue defendant in both capacities. If the court were to construe plaintiff's claim as one against defendant in his official capacity the result would be the same as plaintiff has not alleged that Superintendent Charron acted in conformity with (or promulgated) an official policy or custom which resulted in a constitutional violation. Indeed the applicable policy as implemented evinces a degree of concern for minimizing any possible ill effects from ETS far above the level of "deliberate indifference."

4

Perfection is not required, and mere negligence, or failure to enact a better or more effective policy, does not equate to deliberate indifference.  See Jordan v. New Jersey Dept. of Corrections, 881 F. Supp. 947 (D.N.J. 1995).  Plaintiff offers nothing which tends to show that defendant was deliberately indifferent to the effects of ETS in general, or with respect to him individually.

Judgment is entered in favor of defendant on plaintiff's Eighth Amendment claims.  The clerk is directed to close the case.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

June 30, 1998

cc:   Julian L. Myers, pro se
      John A. Curran, Esq.